**Michigan Supreme Court**
**Lansing, Michigan**

# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Corbin R. Davis

PEOPLE v BURNS

Docket No. 145604. Argued April 10, 2013 (Calendar No. 4). Decided June 18, 2013.

David Barry Burns was convicted by a jury in the Bay Circuit Court of first-degree criminal sexual conduct, MCL 750.520b, following statements of sexual abuse made by CB, his four-year-old daughter, to a bible school teacher, a forensic interviewer and a sexual-assault nurse examiner. The bible school teacher conditionally testified at trial about CB's out-of-court statements before CB was called to testify. The prosecutor then attempted to elicit CB's testimony four times, but was unsuccessful. The court, Kenneth W. Schmidt, J., admitted the bible school teacher's testimony, concluding that because defendant had told CB "not to tell" during the alleged abuse, defendant had rendered CB unavailable to testify and that the testimony was therefore admissible under the forfeiture-by-wrongdoing rule, MRE 804(b)(6). The Court of Appeals, JANSEN, P.J., and CAVANAGH and HOEKSTRA, JJ., reversed in an unpublished opinion per curiam issued June 14, 2012 ( Docket No. 304403), concluding that the prosecution had failed to establish by a preponderance of the evidence that defendant had both the specific intent to cause CB's unavailability and that the wrongdoing did in fact cause CB's unavailability. The Supreme Court granted the prosecution's application for leave to appeal. 493 Mich 879 (2012).

In a unanimous opinion by Justice MCCORMACK, the Supreme Court *held*:

MRE 804(b)(6), which contains a specific intent requirement, allows for the admission of hearsay if the declarant is unavailable and the statement is offered against a party that has engaged in or encouraged wrongdoing that was specifically intended to, and did, procure the unavailability of the witness.

1. Under MRE 804(b)(6), a defendant can forfeit his right to exclude hearsay by his own wrongdoing. To admit hearsay evidence under MRE 804(b)(6), the prosecution must show by a preponderance of the evidence that: (1) the defendant engaged in or encouraged wrongdoing, (2) the wrongdoing was intended to procure the declarant's unavailability, and (3) the wrongdoing did procure the unavailability. The plain language of the court rule incorporates a specific intent requirement; the prosecution must show that the defendant acted, at least in part, with the particular purpose to cause the declarant's unavailability, rather than the mere knowledge that the wrongdoing may cause the witness's unavailability. The timing of the wrongdoing is not determinative by itself, but wrongdoing after the underlying criminal activity has been reported or discovered is inherently more suspect, and can give rise to a strong inference of intent to cause a declarant's unavailability. In this case, the trial court abused its discretion by admitting the

hearsay testimony because the prosecution failed to establish by a preponderance of the evidence that defendant's conduct both was intended to, and did, cause CB's unavailability. Even if the trial court correctly found that defendant engaged in wrongdoing, the trial court failed to make an express finding that defendant intended to procure the unavailability of CB as a witness. Without such a finding, defendant's contemporaneous statements to CB at the time of the alleged abuse do not compel a finding on appellate review that defendant specifically intended those statements to make CB unavailable to testify. The statements occurred before the suspected abuse was reported; defendant left the family home and had no further contact with CB after the suspected abuse was reported, and nobody else attempted to influence CB on his behalf. In addition, the trial court indicated that CB was unavailable to testify because of her infirmity, her youth, and her inability to testify in open court. Because these findings did not include defendant's wrongdoing as a reason for CB's unavailability and are not clearly erroneous, the prosecution also failed to satisfy the causation element of MRE 804(b)(6).

2. The admission of testimony regarding CB's statement was outcome determinative. Other than the improperly admitted hearsay testimony, the prosecution failed to present sufficient evidence of defendant's alleged criminal sexual conduct. Given the lack of additional evidence, it was more probable than not that the erroneous admission of the hearsay testimony affected the outcome of the trial and reversal was warranted.

Affirmed.

©2013 State of Michigan

# Opinion

Chief Justice:    Justices:

Robert P. Young, Jr.    Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

FILED JUNE 18, 2013

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellant,

v      No. 145604

DAVID BARRY BURNS,

     Defendant-Appellee.

BEFORE THE ENTIRE BENCH

MCCORMACK, J.

In this case, we consider whether the Court of Appeals correctly reversed defendant's conviction and remanded for a new trial. It did so on the grounds that the circuit court erred by admitting hearsay testimony on the theory that defendant's conduct amounted to forfeiture by wrongdoing under the Michigan Rules of Evidence.[1] We agree that the circuit court erred by admitting the challenged statements, because the prosecution failed to demonstrate that defendant had the specific intent to, and in fact did,

---

[1] MRE 804(b)(6).

cause the unavailability of the declarant as a witness.[2]  Accordingly, we affirm the Court of Appeals judgment.

## I.  FACTS AND PROCEDURAL HISTORY

On August 18, 2010, a bible school teacher (Gonzales) filed a police report concerning disclosures made to her the day before by a four-year-old girl (CB).  The disclosures suggested that CB had been sexually abused by defendant, her father.  Defendant promptly moved out of the home he shared with CB and her mother.  Defendant was arrested on September 2, 2010, and he had no further contact with CB.

After the initial disclosure to Gonzales, CB was interviewed twice, first by a forensic interviewer on September 1, 2010, and later by a sexual-assault nurse examiner.  In both interviews CB indicated that defendant had engaged in sexual conduct with her.  A medical examination did not find evidence of sexual intercourse.

CB did not testify at the preliminary examination.  Nevertheless, defendant was bound over to circuit court.[3]  At trial, the court permitted Gonzales to testify to CB's out-of-court statements concerning the suspected abuse *before* CB testified.[4]  Gonzales

---

[2] *Id.*

[3] The district court based its decision in support of the bindover on the testimony of the sexual-assault nurse examiner.  Her testimony was accepted over defendant's objection, under the medical-treatment exception to hearsay.  MRE 803(4).

[4] MRE 803A permits the admission of a declarant's out-of-court statement "describing an incident that included a sexual act performed with or on the declarant by the defendant . . . to the extent that [the statement] corroborates testimony given by the declarant during the same proceeding," providing (among other limitations) that the statement is introduced through the testimony of someone other than the declarant.  The rule does not expressly require that the declarant testify to the sexual act before the

2

testified that CB had told her that "Dave Junior" hurt her by licking and digitally penetrating her "butt." After Gonzales testified, the prosecutor attempted to elicit testimony from CB four times.[5] All four attempts were unsuccessful. CB left the witness chair, hid under the podium, refused to answer questions asked by the prosecutor, indicated that she would *not* tell the truth, stated that she was fearful of the jury, and expressed a desire to leave the courtroom.

The trial court then held a hearing to determine whether there was a separate basis for admitting Gonzales's conditionally admitted testimony, because MRE 803A required CB to testify.[6] The prosecutor argued, and the court agreed, that defendant had rendered CB unavailable to testify through his own wrongdoing, and the court admitted Gonzales's testimony under MRE 804(b)(6). The trial court based its ruling on a video recording of CB's interview with the forensic interviewer: When asked if defendant had said anything during the alleged abuse, CB stated that defendant told her "not to tell," and that

corroborating witness testifies to the out-of-court statement, but it does require that the declarant testify at some point in the proceedings.

[5] Multiple accommodations were made to attempt to get CB to testify, including switching the prosecution and defense tables so that CB was closer to the prosecutor; allowing a victim's advocate to accompany CB while testifying; clearing the court of visitors; moving the jury to a different room to watch CB's appearance on closed-circuit television; and allowing a private deposition at the prosecutor's office without defendant or the jury present.

[6] The trial court rejected the prosecutor's argument that CB's statement to Gonzales was an excited utterance. See MRE 803(2). The Court of Appeals rejected the prosecutor's argument that the testimony of the sexual-assault nurse examiner was admissible under the medical-treatment exception. See MRE 803(4). The prosecutor does not advance the excited-utterance argument here, and we agree with the Court of Appeals' ruling regarding the medical-treatment exception.

"[defendant] didn't want me to tell nobody" or else she would "get in trouble." The trial court determined that defendant's instructions, as recounted by CB, were sufficient to find forfeiture by wrongdoing.

The trial court also determined that CB was unavailable to testify, a condition for admissibility under MRE 804(b)(6), "because, among other things, of her infirmity, her youth, to be able to testify here in court and the fear, frankly, that she has of testifying here in court."[7]

Having found Gonzales's testimony admissible under MRE 804(b)(6), the trial court also concluded that defendant had forfeited his confrontation right.[8] The court admitted the testimony of the sexual-assault nurse examiner and the transcript and video recording of CB's forensic interview with the forensic interviewer. CB never testified. There was no other evidence of the abuse apart from the hearsay testimony. Defendant testified that he did not abuse CB.

The jury convicted defendant of first-degree criminal sexual conduct, MCL 750.520b. The Court of Appeals reversed in an unpublished opinion per curiam,[9] concluding that the circuit court erred in its application of the forfeiture-by-wrongdoing analysis. The Court of Appeals concluded that the prosecutor had failed to establish by a

---

[7] The trial court did not specify on which specific subsection of MRE 804(a) its unavailability finding was based. However, defendant does not challenge this ruling, and we decline to consider it.

[8] US Const, Am VI; see *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004); *Giles v California*, 554 US 353; 128 S Ct 2678; 171 L Ed 2d 488 (2008).

[9] *People v Burns*, unpublished opinion per curiam of the Court of Appeals, issued June 14, 2012 (Docket No. 304403).

4

preponderance of the evidence that defendant had both the specific intent to cause CB's unavailability, and that the wrongdoing did, in fact, cause CB's unavailability. We granted leave to appeal.[10]

## II. STANDARD OF REVIEW

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion.[11] Preliminary questions of law, including whether a rule of evidence precludes the admission of evidence, are reviewed de novo.[12] Likewise, interpretation of a court rule is a question of law that we review de novo.[13] A preserved error in the admission of evidence does not warrant reversal unless "'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative."[14]

---

[10] *People v Burns*, 493 Mich 879 (2012). Our grant order directed the parties to address:

> [W]hether the trial court abused its discretion in admitting the complainant's out-of-court statements under the forfeiture-by-wrongdoing exception to the hearsay rule set out in MRE 804(b)(6); and [] whether the Court of Appeals substituted its judgment for that of the trial court and, in doing so, invaded the fact-finding authority vested in the trial court.

[11] *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003).

[12] *Id*.

[13] *Marketos v Am Employers Ins Co*, 465 Mich 407, 412; 633 NW2d 371 (2001).

[14] *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999) (citation omitted).

### III.  LEGAL BACKGROUND

A defendant can forfeit his right to exclude hearsay by his own wrongdoing.[15] MRE 804(b)(6) provides that a statement is *not* excluded by the general rule against hearsay if the declarant is unavailable, and the "statement [is] offered against a party that has engaged in or encouraged wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness."[16]  This rule, commonly known as the forfeiture-by-wrongdoing rule, was adopted in 2001 and is substantially similar to its federal counterpart, FRE 804(b)(6).[17]

As the United States Supreme Court explained in *Giles*, forfeiture by wrongdoing has its roots in the common law, and is based on the maxim that "no one should be permitted to take advantage of his wrong."[18]  The forfeiture doctrine not only provides a basis for an exception to the rule against hearsay; it is also an exception to a defendant's constitutional confrontation right.  Insofar as it applies to the Sixth Amendment, however, the forfeiture doctrine requires that the defendant must have specifically intended that his wrongdoing would render the witness unavailable to testify.[19]

---

[15] MRE 804(b)(6).

[16] *Id*.

[17] FRE 804(b)(6) provides for admission of "[a] statement offered against a party that wrongfully caused—or acquiesced in wrongfully causing—the declarant's unavailability as a witness, and did so intending that result."

[18] *Giles*, 554 US at 359, 366, citing *Reynolds v United States*, 98 US 145 (1879); for an influential, pre-*Crawford* discussion of the doctrine see Friedman, *Confrontation and the Definition of Chutzpa*, 31 Israel L Rev 506, 532-535 (1997).

[19] *Giles*, 554 US at 359-360, 367.

6

In *Giles*, the defendant was convicted of murder in the death of his ex-girlfriend. He testified that he had killed her in self-defense. The prosecution introduced statements the victim had made to police officers several weeks before the homicide, in which she described a death threat the defendant made to her. The California Supreme Court determined that the statements were testimonial, but that defendant had forfeited his right to confront the victim because he had committed the murder for which he was on trial, and because his intentional criminal act had caused the victim to be unavailable to testify.[20] The United States Supreme Court reversed, holding that for a defendant to forfeit his confrontation right by his or her wrongdoing, the defendant must have had "in mind the particular purpose of making the witness unavailable."[21]

Since its adoption in 2001, only two published Michigan appellate cases have discussed the application of Michigan's forfeiture rule, MRE 804(b)(6). Both preceded *Giles*. In *People v Bauder*, the Court of Appeals discussed MRE 804(b)(6) but did not address its proper application.[22] There, the defendant argued that his confrontation right had been violated when the trial court admitted hearsay testimony.[23] The Court of Appeals ultimately determined that the challenged statements were nontestimonial and properly admitted as statements of a then-existing mental condition under MRE 803(3).[24]

---

[20] *Id.*; *People v Giles*, 40 Cal 4th 833, 850; 152 P3d 433, 444 (2007).

[21] *Giles*, 554 US at 367.

[22] *People v Bauder*, 269 Mich App 174, 186; 712 NW2d 506 (2005).

[23] *Id.*

[24] *Id.* at 188.

Yet in discussing the forfeiture issue, the *Bauder* Court rejected the defendant's argument that forfeiture by wrongdoing for purposes of the Confrontation Clause required a showing of intent. [25] That approach was rejected by the United States Supreme Court in *Giles*.[26]

The Court of Appeals has specifically addressed forfeiture by wrongdoing more recently in *People v Jones*.[27] There, the Court of Appeals held that to admit hearsay under the forfeiture doctrine, the prosecution was required to prove: "(1) that the defendant engaged in or encouraged wrongdoing; (2) that the wrongdoing was intended to procure the declarant's unavailability; and (3) that the wrongdoing did procure the unavailability."[28] The *Jones* Court further held that the preponderance of the evidence standard applied, consistent with a majority of the federal circuit courts.[29] While *Jones* preceded *Giles*, its application of forfeiture by wrongdoing as incorporating a specific

---

[25] *Id*. at 186-187, quoting *United States v Garcia-Meza*, 403 F3d 364, 370-371 (CA 6, 2005) ("The Supreme Court's recent affirmation of the 'essentially equitable grounds' for the rule of forfeiture strongly suggests that the rule's applicability does not hinge on the wrongdoer's motive. The Defendant, regardless of whether he intended to prevent the witness from testifying against him or not, would benefit through his own wrongdoing if such a witness's statements could not be used against him, which the rule of forfeiture, based on the principles of equity, does not permit.").

[26] *Giles*, 554 US at 367-368.

[27] *People v Jones*, 270 Mich App 208; 714 NW2d 362 (2006).

[28] *Jones*, 270 Mich App at 217, quoting *United States v Scott*, 284 F3d 758, 762 (CA 7, 2002) (quotation marks and brackets omitted).

[29] *Id.* at 215.

intent element is consistent with *Giles*.[30]  We agree with the *Jones* Court that MRE 804(b)(6) incorporates a specific intent requirement.  For the rule to apply, a defendant must have "engaged in or encouraged wrongdoing that was *intended to, and did, procure the unavailability of the declarant as a witness.*"[31]

We note that the Court of Appeals explicitly avoided defendant's Confrontation Clause claim in this case in recognition of our constitutional avoidance doctrine.[32]  It is nonetheless readily apparent that evidence offered under the forfeiture exception will very regularly be testimonial and subject to Sixth Amendment scrutiny.  As forfeiture by wrongdoing is the only recognized exception to the Sixth Amendment's guarantee of the right to cross-examine adverse witnesses,[33] the constitutional question will often go hand-in-hand with the evidentiary question, as it did in the trial court here.

---

[30] In finding forfeiture, the *Jones* Court relied in part on testimony that the defendant had, post-arrest, sent a letter to his friends instructing them to fight the declarant to stop him from testifying.  270 Mich App at 219.

[31] MRE 804(b)(6) (emphasis added).

[32] *Burns*, unpub op at 5, citing *People v Riley*, 465 Mich 442, 447; 636 NW2d 514 (2001), for the proposition that a constitutional issue should not be addressed where the case may be decided on non-constitutional grounds.

[33] Unlike forfeiture by wrongdoing, the United States Supreme Court has not expressly recognized that dying declarations are an exception to the Sixth Amendment's confrontation right.  See *Michigan v Bryant*, 562 US ___; 131 S Ct 1143, 1151 n 1; 131 L Ed 2d 93 (2011) ("We noted in *Crawford* that we 'need not decide in this case whether the Sixth Amendment incorporates an exception for testimonial dying declarations.' Because of the State's failure to preserve its argument with regard to dying declarations, we similarly need not decide that question here.") (citation omitted).

9

Because the forfeiture doctrine can provide both an exception to the general rule against hearsay and an exception to the confrontation right, the United States Constitution does not prevent the states from crafting a forfeiture-by-wrongdoing exception for *nontestimonial* hearsay that does not require any proof of a defendant's specific intent.[34] But the plain language of our court rule in fact incorporates the specific intent requirement at issue in *Giles*.[35]

## IV. ANALYSIS

To admit evidence under MRE 804(b)(6), the prosecution must show by a preponderance of the evidence that: (1) the defendant engaged in or encouraged wrongdoing; (2) the wrongdoing was intended to procure the declarant's unavailability;

---

[34] The Supreme Court of California's error in *Giles* was not in adopting an "equitable" forfeiture standard: it was applying that standard to instances of *testimonial* hearsay. See *Giles*, 554 US at 376 ("[O]nly *testimonial* statements are excluded by the Confrontation Clause. [Non-testimonial statements] would be excluded, if at all, only by hearsay rules, which are free to adopt the dissent's version of forfeiture by wrongdoing."). See, *e.g.*, *State v Jensen*, 331 Wis 2d 440, 457; 794 NW2d 482 (2010) ("The nontestimonial statements are not excluded by the Confrontation Clause and, for purposes of a hearsay objection, may be analyzed under a broader version of the forfeiture by wrongdoing doctrine, such as that proffered by the dissent in *Giles* and by our supreme court."); *Roberts v State*, 894 NE2d 1018, 1024 (Ind Ct App, 2008) ("[W]e accept the Supreme Court's invitation to take a slightly broader view of the doctrine of forfeiture by wrongdoing as advocated by Justice Breyer in his dissent in *Giles* as it applies to non-testimonial statements under Indiana law.").

[35] *Giles*, 554 US at 367-368. As a result, evidence properly admitted under MRE 804(b)(6) will likely also not be barred by the constitutional requirement imposed by the Sixth Amendment. Whether our rule should be amended to recognize the distinction between testimonial and nontestimonial hearsay is not an issue before us in this case. At oral argument, the prosecution explicitly stated that it was not arguing for a different standard depending on whether the hearsay was testimonial.

and (3) the wrongdoing did procure the unavailability.[36]  For purposes of our inquiry, we assume that the trial court correctly found that defendant did, in fact, engage in wrongdoing.

Turning to the second element, it is also alleged that during the alleged abuse defendant instructed CB "not to tell" anyone and warned her that if she told, she would "get in trouble."  The question is whether these threats, made contemporaneously with the abuse but before any report or investigation, require a finding that defendant "intended to . . . procure the unavailability of [CB] as a witness."[37]  The prosecution concedes that the trial court did not make a specific finding with regard to defendant's intent.  Rather, it asks this Court to hold that the necessary finding was implicit in the trial court's evidentiary ruling, and is compelled by the record.  We are not persuaded.

Even if the record were to support an express finding that the trial court never made, the record does not *compel* that finding.  Defendant immediately left the family home after Gonzales reported the suspected abuse.  He had no contact with CB whatsoever once the conduct was reported, and nobody else attempted on his behalf to influence CB not to testify.  There is no evidence or allegation that defendant attempted to influence CB directly or indirectly apart from the contemporaneous statements at issue.

The timing of defendant's alleged wrongdoing is also relevant to our conclusion that the record does not compel a finding that defendant had the specific intent to procure CB's unavailability.  Defendant's instruction to CB not to report the abuse was made

[36] *Jones*, 270 Mich App at 217.

[37] MRE 804(b)(6).

11

before there was any indication that the abuse had been reported or discovered. While the timing of the wrongdoing is by itself not determinative, it can inform the inquiry: a defendant's wrongdoing *after* the underlying criminal activity has been reported or discovered is inherently more suspect, and can give rise to a strong inference of intent to cause a declarant's unavailability.[38]

Without the guidance of an explicit trial court finding to shed light on the record, defendant's contemporaneous statements to CB are as consistent with the inference that defendant's intention was that the alleged abuse go undiscovered as they are with an inference that defendant specifically intended to prevent CB from testifying.[39] Further, assuming defendant knew that CB would not disclose the abuse because of his directive, that knowledge is not necessarily the equivalent of the specific intent to cause CB's

---

[38] When a defendant acts to discourage a witness's testimony about *existing* charges, the analysis is easier. Unsurprisingly, there are many forfeiture cases discussing intent relating to already-charged conduct. See, *e.g.*, *United States v Stewart*, 485 F3d 666, 671-672 (CA 2, 2007) (holding that circumstantial evidence can establish that while the defendant faced drug charges, he procured the murder of a witness who was scheduled to testify against him to prevent that testimony); *People v Banos*, 178 Cal App 4th 483, 502; 100 Cal Rptr 3d 476 (2009) (finding *Giles* was satisfied by the testimonial statements of the defendant's ex-girlfriend, for whose murder he was being tried, because the evidence showed that the defendant had killed her both out of jealousy *and* to prevent her from testifying in pending cases and from cooperating with authorities). We note that there are important differences between these cases and the case before us. In addition to the timing of the misconduct, homicide cases present different inferences than the instant case.

[39] In general, questions of intent are factual determinations for the trier of fact to make. See *People v Kieronski*, 214 Mich App 222, 232; 542 NW2d 339 (1995) ("Intent is a question of fact to be inferred from the circumstances by the trier of fact."). The trial court acts as the fact finder in determining questions of fact preliminary to the admissibility of evidence. MRE 104(a).

unavailability to testify as required by MRE 804(b)(6). Attempting to equate the two in every circumstance improperly assumes that a defendant's knowledge is always the same as a defendant's purpose. In other words, whether a person in defendant's position would reasonably foresee that the wrongdoing might cause CB's unavailability is separate and distinct from whether defendant intended to procure the declarant's unavailability to testify at trial. We interpret the specific intent requirement of MRE 804(b)(6)—to procure the unavailability of the declarant as a witness—as requiring the prosecution to show that defendant acted with, at least in part, the particular purpose to cause CB's unavailability, rather than mere knowledge that the wrongdoing may cause the witness's unavailability. Without the aid of a specific factual finding from the trial court in this case, we are unable to determine from the record whether defendant had the requisite specific intent.[40]

We are mindful that prosecuting child sexual abuse cases with young victims presents acute complications. But we are not persuaded by the prosecution's argument that public policy and the nature of the alleged crime demand that we infer intent under the facts of this case. The *Giles* Court expressly rejected a similar argument in the

---

[40] A comparison to *Giles* is illustrative. There, the wrongdoing was an intentional homicide. Thus, the declarant's unavailability was not just reasonably foreseeable, it was certain. But, as the *Giles* Court recognized, forfeiture by wrongdoing requires a purposed-based inquiry: "the dissent's claim that knowledge is sufficient to show intent is emphatically *not* the modern view." *Giles*, 554 US at 368, citing 1 LaFave, Substantive Criminal Law, § 5.2, p 340 (2d ed 2003). While the alleged wrongdoing in the instant case is fundamentally different than the murder in *Giles*, the requisite specific intent required—to a cause a declarant's unavailability to testify—remains the same.

13

context of domestic violence, and refused to create a presumption of intent.[41] At the same time, we recognize that the intent analysis must ultimately be made on a case-by-case basis.[42] For these reasons, we are not persuaded that the facts of this case require us to conclude that the MRE 804(b)(6)-required specific intent can necessarily be inferred from the trial court's findings[43]

---

[41] *Giles*, 554 US at 376-377.

[42] The Court of Appeals stated that "[a]lthough it appears that the purpose of any such statements 'not to tell' may have been to prevent the victim from disclosing the criminal acts, *it is doubtful that they can be construed as threats intended to prevent the victim from testifying at trial*." *Burns*, unpub op at 2 (emphasis added). Although the record in this case does not support such a construction because it is devoid of both an explicit trial court finding of specific intent or evidence to compel such a conclusion, we emphasize that such statements *must* be evaluated in light of the circumstances in which they were made, on a case-by-case basis. Although not required by our court rules, we strongly encourage trial courts to make findings of fact on the record for each of the three elements required by MRE 804(b)(6).

[43] We recognize that the *Giles* holding has been criticized for its policy implications, especially in cases of domestic violence culminating in murder. See, *e.g.*, Lininger, *The Sound of Silence: Holding Batterers Accountable for Silencing Their Victims*, 87 Tex L Rev 857 (2009); Davies, *Selective Originalism: Sorting Out Which Aspect of Giles's Forfeiture Exception to Confrontation Were or Were Not "Established at the Time of the Founding,"* 13 Lewis & Clark L Rev 605 (2009). Commentators have also advocated for different standards to be applied in cases of child witnesses in a variety of forfeiture and Confrontation clause contexts. See, *e.g.*, Lyon and Dente, *Child Witnesses and the Confrontation Clause*, 102 J Crim L & Criminology 1181 (2012) (proposing a "forfeiture by exploitation" approach in cases of child abuse); Dripps, *Controlling the Damage Done by Crawford v Washington: Three Constructive Proposals*, 7 Ohio St J Crim L 521 (2010) (suggesting a rebuttable presumption that an otherwise unexplained unavailability of a witness previously injured or threatened by the accused is the result of improper pressure brought by the defendant). Yet, the courts' respect for the Sixth Amendment and the rules of evidence may be all that separates an accusation from a wrongful conviction. In any event, our role is not to enter such policy debates but rather to apply the United States Supreme Court's precedent and our own rules faithfully.

We also conclude that the trial court's application of the third element required to satisfy MRE 804(b)(6)—that defendant's conduct in fact *caused* CB's unavailability—*undermines* its conclusion that the hearsay testimony was admissible pursuant to MRE 804(b)(6). As the trial court recognized in declaring CB unavailable, her inability to testify was based on her "infirmity, her youth," and her fear of testifying in open court. The trial court did not include defendant's wrongdoing among the reasons for CB's inability to testify. In fact, the objective evidence about defendant's alleged wrongdoing would tend to support the conclusion that defendant's wrongdoing *did not* cause CB's inability to testify. Defendant allegedly directed CB to "not tell," yet she did not follow that direction. Instead, she told the bible school teacher, the forensic interviewer, and the sexual-assault nurse examiner. Moreover, at one point during an interview, CB stated that defendant had told her "not to tell" anybody because she would "get in trouble," but then immediately acknowledged that she "won't get in trouble" for telling. Because the trial court's findings about the reasons for CB's unavailability did not include defendant's wrongdoing and are not clearly erroneous, we conclude that the prosecutor has not satisfied the causation element of MRE 804(b)(6).

Finally, we agree with the Court of Appeals that the admission of testimony regarding CB's statements was outcome determinative. Aside from the improperly admitted hearsay testimony, the prosecution failed to present sufficient evidence of defendant's alleged criminal sexual conduct. Given the lack of any physical evidence, third-party eyewitnesses, or testimony from CB, we conclude that it is more probable than not that the erroneous admission of the hearsay testimony was outcome determinative.

15

## VI. CONCLUSION

We hold that the prosecutor failed to establish by a preponderance of the evidence that defendant's conduct both was intended to, and did, cause CB's unavailability. Thus, admission of CB's hearsay statements pursuant to MRE 804(b)(6) was an abuse of discretion, and the error was outcome determinative. Accordingly, we affirm the judgment of the Court of Appeals and remand this case for a new trial.

Bridget M. McCormack
Robert P. Young, Jr.
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
David F. Viviano