# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 7, 2018

Plaintiff-Appellee,

v

No. 329845
Wayne Circuit Court
LC No. 15-002167-01-FH

TYWON DEON HAMILTON,

Defendant-Appellant.

ON REMAND

Before: RIORDAN, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

This case returns to us on remand from the Michigan Supreme Court. In an order entered May 18, 2018, the Michigan Supreme Court, in lieu of granting leave to appeal, vacated the portions of this Court's July 6, 2017 judgment that addressed whether defendant preserved his challenge to the admissibility of hearsay testimony under MRE 803A. The Michigan Supreme Court remanded to this Court to allow us to reconsider "the hearsay issue under the standard for preserved evidentiary error, see *People v Burns*, 494 Mich 104[; 832 NW2d 738] (2013), and for consideration of whether (1) the prosecutor "made known" to the defendant "the particulars" of the MRE 803A statement, and (2) the defendant was given a "fair opportunity" to prepare to meet the statement, as required by MRE 803A." *People v Hamilton*, ___ Mich ___; 911 NW2d 200 (2018) (Docket No. 156411). The Michigan Supreme Court denied leave to appeal in all other respects. We affirm.

## I. BACKGROUND

In our initial opinion, we set forth the facts underlying this appeal:

Defendant's convictions[1] are related to an encounter between defendant and the minor complainant, MD, in the fall of 2012, when MD was in second

---

[1] Following a jury trial, defendant was convicted of second-degree criminal sexual conduct ("CSC II"), MCL 750.520c(1)(a) (sexual contact with a person under 13), dissemination of sexually explicit material to a minor, MCL 722.675 and aggravated indecent exposure, MCL

-1-

grade. At trial, the prosecution called three witnesses: MD; MD's mother, Miieshia Duhart; and City of Detroit Police Investigator Kimberly Turner. MD testified that defendant called her into the bathroom while he was babysitting MD and her younger siblings. When she arrived at the bathroom, defendant was unclothed. MD tried to walk away, but defendant pulled her back inside the bathroom. He then showed her a video on his cellular telephone which depicted him "humping" his girlfriend without any clothes on. MD testified that, while the video was playing, defendant was "messing with his private part[,]" and "[w]hite stuff came out [of] the top." Later the same night, while MD was lying in bed with her younger siblings and defendant, defendant, while looking at his cellular telephone, put his hand inside her pajama pants and rested it on her "cookie." When asked what body part she calls her cookie, MD explained that it is the "middle part" where pee comes out when she goes to the bathroom. Soon afterward, MD heard Duhart return home and call out for defendant to open the front door, prompting MD to tell defendant that her mother was asking him to open the door. Before leaving MD's room to assist Duhart, defendant said, "Don't tell or I'm going to spank you." MD did not immediately disclose the events to any friends or family members. However, she testified at trial that she first disclosed the incident to Duhart.

Duhart testified that MD disclosed the incidents to her in October 2013, after the family had moved to another house. At the time, MD was cleaning a bathroom and called her mother inside, stating that she had something to tell Duhart. Duhart explained that MD said defendant called her into the bathroom on an earlier occasion and showed her a video of himself and his girlfriend. MD also told Duhart that defendant was naked when he showed her the video and that he was "playing with [him]self." Duhart asked MD if defendant touched her, and MD said, "Not then," but went on to explain that defendant had put his hand in MD's pants in the morning on a different day, "right before they got up to get ready for school . . . ."

Investigator Turner testified that she took a voluntary statement from defendant on December 12, 2013. Defendant denied MD's allegations, but acknowledged making a sexual video where he engaged in sexual intercourse with two women at the same time, one of whom was the same woman, defendant's girlfriend, that MD identified as participating in the sexual video that defendant showed her on his cellular telephone. Defendant explained that the video was too dark to see anything on the screen but shadows. He did not know how MD had become aware of its existence. [*People v Hamilton*, unpublished

750.335a(2)(b). Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to 25 to 40 years' imprisonment for the CSC-II conviction, 10 to 15 years' imprisonment for the distribution of sexually explicit matter to a minor conviction, and 10 to 15 years' imprisonment for the aggravated indecent exposure conviction.

per curiam opinion of the Court of Appeals, issued July 6, 2017 (Docket No. 329845), pp 1-2.]

On appeal, defendant raised three issues. First, he argued that the trial court erred by refusing to sentence him in accordance with a prior plea agreement, which would have resulted in defendant being convicted of "assault with intent to commit penetration, MCL 750.520g(1), with a sentence of 18 months to 10 years' imprisonment." *Id*. at 2-3. We concluded that the trial court did not err when it determined that it could not accept this sentence agreement and allowed defendant to withdraw his plea. *Id*. at 3-5.

Second, and as relevant to the Michigan Supreme Court's remand order, we considered the MRE 803A issue. Defendant argued that three different foundational requirements to admission of a statement under this rule were not satisfied because the trial court failed to consider: (1) whether the statement was the first corroborative statement made by MD, (2) whether the delay in disclosure rendered the statement inadmissible, and (3) whether the prosecution provided sufficient notice of its intent to present MD's statement under MRE 803A. *Id*. at 5. We first explained that while defendant preserved the second and third of these questions in the trial court, the first (i.e., whether MD's statement to Duhart was the first such corroborative statement made by MD) was not raised below, and was thus unpreserved. *Id*. at 5-7.

With regard to whether the first, unpreserved error warranted reversal, we noted that at the preliminary examination, MD had testified that she first told Bridgette Coffee, her godmother, about the sexual abuse before telling Duhart. *Id*. at 8. We observed that defendant's contention that the trial court erred by failing to determine whether the statement to Duhart was indeed MD's first corroborative statement was "curious," given our opinion that the trial court was not asked to resolve that question. *Id*. We further explained that even presuming the trial court erred, the error would not warrant reversal under the plain-error test. *Id*. at 8-10. We largely relied on *People v Gursky*, 486 Mich 596; 786 NW2d 579 (2010), a case that provided a framework for determining whether a preserved error in the admission of a hearsay statement warrants reversal under the harmless-error test that applies to preserved evidentiary questions. *Hamilton*, unpub op at 9 and n 8.

With regard to the notice question, we agreed that the prosecution did not provide "formal notice[.]" *Id*. at 10. However, we found that error harmless because the record reflected that trial counsel was clearly aware of MD's statement to Duhart before trial. *Id*. With regard to defendant's claim that the statement was inadmissible due to the delay in disclosure, we rejected this argument, explaining, "MD's testimony established that the delay in disclosure was motivated by her fear that defendant would physically abuse her . . . ." *Id*. Finally, defendant raised a claim that trial counsel was ineffective for failing to object to the trial court's instruction that jurors would not be allowed to have any testimony played back or to see transcripts, and instead, should take notes of any information deemed important. *Id*. at 11. We rejected the argument, determining that trial counsel's decision not to object was a strategic decision, and also one that did not prejudice defendant. *Id*. at 11-13.

In a partial concurrence and dissent, Judge Riordan wrote that in his opinion, the question whether the trial court erred by failing to determine whether MD's statement to Duhart was her

-3-

first corroborative statement was preserved. *Id.* (RIORDAN, J., concurring in part and dissenting in part), at 1. Judge Riordan found that the trial court erred by failing to resolve the question when it was raised, which was before opening statements. *Id.* (RIORDAN, J., concurring in part and dissenting in part), at 2-3. Judge Riordan then examined whether the admission of the statement was harmless, and concluded that it was not. *Id.* (RIORDAN, J., concurring in part and dissenting in part), at 3-5. Judge Riordan joined the majority "in all other respects . . . ." *Id.* (RIORDAN, J., concurring in part and dissenting in part), at 5.

Defendant sought leave to appeal in the Michigan Supreme Court and on May 18, 2018, the Michigan Supreme Court entered an order stating the following:

> On order of the Court, the application for leave to appeal the July 6, 2017 judgment of the Court of Appeals is considered and, pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we VACATE those parts of the Court of Appeals judgment addressing whether the defendant preserved his challenge to the admissibility of hearsay testimony under MRE 803A on the ground that the child complainant's disclosure to the declarant was not the first corroborative statement and whether MRE 803A's notice requirement was satisfied. Because the record establishes that defense counsel articulated a specific objection on hearsay grounds, the Court of Appeals erred in holding that the issue was unpreserved. We REMAND this case to that court for reconsideration of the hearsay issue under the standard for preserved evidentiary error, see *People v Burns*, 494 Mich 104 (2013), and for consideration of whether (1) the prosecutor "made known" to the defendant "the particulars" of the MRE 803A statement, and (2) the defendant was given a "fair opportunity" to prepare to meet the statement, as required by MRE 803A. On remand, the Court of Appeals shall determine whether the testimony at issue was erroneously admitted under MRE 803A, and if so, whether, upon an examination of the entire cause, it is more probable than not that the preserved error was outcome determinative. In all other respects, leave to appeal is DENIED, because we are not persuaded that the remaining questions presented should be reviewed by this Court. [*Hamilton*, ___ Mich at ___.]

## II. ANALYSIS

It is perhaps easiest to begin by explaining what is not at issue in this appeal. First, the only areas in which the Michigan Supreme Court disturbed our prior decision relate to MRE 803A. Thus, our conclusion that the trial court did not err with respect to defendant's plea agreement remains valid, as does our determination that defendant's claim alleging ineffective assistance of counsel was unsuccessful. Thus, the only issues now before us relate to MRE 803A, which provides the following:

> A statement describing an incident that included a sexual act performed with or on the declarant by the defendant or an accomplice is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding, provided:

-4-

(1) the declarant was under the age of ten when the statement was made;

(2) the statement is shown to have been spontaneous and without indication of manufacture;

(3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and

(4) the statement is introduced through the testimony of someone other than the declarant.

If the declarant made more than one corroborative statement about the incident, only the first is admissible under this rule.

A statement may not be admitted under this rule unless the proponent of the statement makes known to the adverse party the intent to offer the statement, and the particulars of the statement, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet the statement.

This rule applies in criminal and delinquency proceedings only.

Defendant challenges three foundational requirements under the rule: (1) the immediacy requirement stated under MRE 803A(3); (2) the rule that the statement introduced at trial must be the first such corroborative statement, see MRE 803A; *People v Douglas*, 496 Mich 557, 575; 852 NW2d 587 (2014); and (3) the notice requirement stated at the end of MRE 803A. Our prior opinion resolved the first question by explaining that the evidentiary record showed that the delay in disclosure was caused by a threat of physical harm, and thus, was " 'excusable as having been caused by fear or other equally effective circumstance . . . .' MRE 803A(3)." *Hamilton*, unpub op at 10. The Michigan Supreme Court's order did not disturb this holding, *Hamilton*, ___ Mich at ___, and thus, our disposition of the issue remains valid.

The Michigan Supreme Court's order did vacate the part of our prior opinion "addressing whether defendant preserved his challenge to the admissibility of hearsay testimony under MRE 803A on the ground that the child complainant's disclosure to the declarant [sic] was not the first corroborative statement . . . ." *Id*. The order goes on to state that this Court erred in finding that the question was unpreserved. *Id*. Thus, we must now address this question under the standard for preserved evidentiary error. "A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *Burns*, 494 Mich at 110. "Preliminary questions of law, including whether a rule of evidence precludes the admission of evidence, are reviewed de novo." *Id*. "A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *Id*. (quotation marks and citations omitted). "The burden is on the defendant to show that the error resulted in a miscarriage of justice." *Gursky*, 486 Mich at 619.

Our prior opinion criticized defendant for failing to clearly raise the question whether MD's disclosure to Duhart was the first corroborative statement MD made, and questioned

whether it would be fair to fault the trial court in such circumstances for failing to further address the issue. *Hamilton*, unpub op at 8. But we then went on to explain that even accepting that such an error occurred, it would not warrant relief. *Id*. at 8-10. We looked to *Gursky*, 486 Mich at 619-621, to decide whether reversal was warranted under the plain-error test for unpreserved errors, focusing on the prejudice prong. Examining *Gursky*, we explained:

> In *Gursky*, the Michigan Supreme Court offered the following legal principles to consider in determining whether the erroneous admission of evidence pursuant to MRE 803A was harmful:
>
> Michigan law provides that where a hearsay statement is not offered and argued as substantive proof of guilt, but rather offered merely to corroborate the child's testimony, it is more likely that the error will be harmless. Moreover, the admission of a hearsay statement that is cumulative to in-court testimony by the declarant can be harmless error, particularly when corroborated by other evidence. This Court has cautioned, though, that the fact that the statement [is] cumulative, standing alone, does not automatically result in a finding of harmless error . . . . [Instead, the] inquiry into prejudice focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence. In a trial where the evidence essentially presents a one-on-one credibility contest between the victim and the defendant, hearsay evidence may tip the scales against the defendant, which means that the error is more harmful. This may be even more likely when the hearsay statement was made by a young child, as opposed to an older child or adult. However, if the declarant himself testified at trial, any likelihood of prejudice was greatly diminished because the primary rationale for the exclusion of hearsay is the inability to test the reliability of out-of-court statements[.] Where the declarant himself testifies and is subject to cross-examination, the hearsay testimony is of less importance and less prejudicial. [*Hamilton*, unpub op at 9, quoting *Gursky*, 486 Mich at 620-621 (footnotes and citations omitted).]

We continued our analysis in our prior opinion in the following manner:

> As an initial matter, we observe that the prosecution expressly confirmed during trial that Duhart's testimony was offered to corroborate the testimony of MD. The prosecution did so in response to the trial court's questions during Duhart's testimony, outside of the presence of the jury. *Id*. at 620. We also note that MD testified herself during trial, therefore alleviating any prejudice to defendant, and the reliability of her allegations, recounted to Duhart, were vigorously challenged by defense counsel during the course of cross-examination. *Id*. at 621. Further, MD's emotional reactions during her conversation with Duhart were properly allowed as evidence, where reactions are not considered hearsay and are, as the Michigan Supreme Court has clarified, "perfectly admissible at trial." *Id*. at 625. At trial, Duhart described MD as looking "real sad" in the moments before she told Duhart about the sexual contact with defendant, as well as being apprehensive and hesitant about sharing the information regarding the sexual contact with defendant.

While the instant case did present a scenario where the allegations against defendant essentially amounted to a "credibility contest[,]" *id.* at 620-621, it is important to note that defendant himself corroborated a key portion of MD's recitation of the relevant facts involving the sexual contact with defendant. Specifically, during questioning by Investigator Turner, while defendant denied (1) engaging in sexual contact with MD and (2) showing MD a video on his cellular telephone with sexual content, he conceded that he did have a video on his cellular telephone where he engaged in sexual relations with two women at the same time. Notably, one of the women defendant named as participating in the sexual interaction on the video was his girlfriend. Similarly, MD stated that defendant's girlfriend was in the video that defendant showed her on his cellular telephone. Accordingly, MD's testimony was corroborated in part by defendant's own admission of having a video with sexual context on his cellular telephone consistent with the video that MD described. We also note that while there were inconsistencies in MD's testimony as a whole, she was very clear, concise and detailed in her recollection of the sexual contact at defendant's hands. Also, defense counsel vigorously cross-examined MD regarding her recollection of the sexual contact with defendant, and the series of events that took place afterward. Having considered "the nature of [any] error and assess[ing] its effect in light of the weight and strength of the untainted evidence[,]" *id.* at 620, we conclude that defendant has not demonstrated that any error in the admission of Duhart's testimony affected the outcome of the lower court proceedings. [*Hamilton*, unpub op at 9-10, citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).]

The Michigan Supreme Court has concluded that trial counsel did sufficiently raise the question whether MD's statement to Duhart was, in fact, her first corroborative statement. *Hamilton*, ___ Mich at ___. As such, the trial court should have made a preliminary factual determination before allowing the statement to be admitted into evidence. MRE 104(a). Thus, the question is whether the error warrants relief under the harmless-error test that applies to nonconstitutional error. *Burns*, 494 Mich at 110.

It is important to note that while we previously addressed the question under the plain-error test for unpreserved errors, the actual analysis we conducted was the analysis the Michigan Supreme Court now has directed us to apply. Specifically, we looked to *Gursky*, and utilized the *Gursky* framework to determine whether the erroneous admission of hearsay under MRE 803A affected the outcome of the case. *Gursky* involved a preserved claim of error in the admission of hearsay under MRE 803A, and thus, utilized the harmless-error test that we must now apply in this case. *Gursky*, 486 Mich at 619. As we previously recognized in our initial opinion, where a hearsay statement is offered as corroborative evidence of the young complainant's testimony, it is "more likely that the error will be harmless." *Id.* at 620. That was the case here; the prosecution clearly explained that the purpose of admitting the testimony was only to corroborate MD's trial testimony. Further, the hearsay evidence was cumulative of MD's in-court testimony, further supporting our conclusion that the error was harmless, and was corroborated by other evidence; defendant admitted having a video of him engaging in sexual acts on his cellular telephone, which corroborates part of the hearsay statement admitted at trial. *Id.* at 620 and n 45. As we previously recognized, this case was a one-on-one credibility contest between defendant and a child victim. In such a case, hearsay testimony may "tip the scales against the defendant,

which means that the error is more harmful." *Id*. at 620-621. But in this case, the declarant, MD, testified at trial and was extensively cross-examined.[2] As explained in *Gursky*, the primary rationale for excluding hearsay testimony is the fact that the declarant generally cannot be cross-examined. *Id*. at 621. "Where the declarant [her]self testifies and is subject to cross-examination, the hearsay testimony is of less importance and less prejudicial." *Id*.

We would also note the following. The hearsay statement admitted at trial was *not* entirely consistent with MD's trial testimony. In both her trial testimony and the hearsay statement that was admitted, MD described the first incident where defendant showed her a pornographic video while masturbating in the bathroom. And in both her testimony and the hearsay statement, MD described an incident where defendant touched MD's vaginal area. However, in her trial testimony, MD stated that both incidents occurred the same day, with the second occurring at night. But in her statement to Duhart, MD said that the second incident happened on an entirely different day when MD was getting ready to go to school. Thus, the hearsay statement was not entirely corroborative; in fact, it conflicted to some degree with MD's trial testimony. While the statement may have provided some corroborative support, it also cast some additional doubt on MD's veracity. In other words, the statement was not entirely detrimental to defendant's case; in some ways, it supported defendant's defense, which was that MD was fabricating the accusations of sexual abuse.

In addition, a review of the pertinent testimony indicates that at least as much emphasis was placed on MD's outward expressions of emotion before and during the statement as it was on the content of the statement itself. As we noted in our first opinion, MD's "emotional reactions *are not hearsay*, and are perfectly admissible at trial." *Id.* at 625. "Testimony to this effect would be damaging inasmuch as these were [MD]'s inadvertent, non-coerced physical reactions that tended to show the reliability of her statements. More important, though, the testimony about these reactions *is admissible* as non-hearsay because they are nonassertive conduct." *Id*. The real value of MD's disclosure to Duhart was not so much the content of the statement, but rather, the circumstances surrounding how it was made. The statement itself may have been inadmissible, but the circumstances surrounding it, including MD's "nonassertive conduct" were not. *Id*.

---

[2] As addressed in more detail subsequently in this opinion, the Michigan Supreme Court's decision in *Douglas*, 496 Mich at 557 is distinguishable, where in that case the trial court erroneously allowed the admission of testimony from a forensic interviewer, Jennifer Wheeler, who was qualified as an expert witness at trial, as well as the video recording of her interview with the child complainant. *Id*. at 569-570, 571. The Michigan Supreme Court observed that Wheeler's testimony and the video recording of her interview with the child complainant "not only corroborated by echo [the child complainant's] in-court testimony, but added clarity, detail, and legitimacy to it." *Id*. at 581. In *Douglas*, where Wheeler's testimony "did much to alleviate" the reasonable doubt left by the child complainant's testimony, and the video recording "provided further reinforcement[,]" *id*. at 581-582, the admission of Wheeler's testimony and the video recording of the forensic interview were highly prejudicial to the defendant. *Id*. at 581-582.

Finally, we observe that the prosecution's closing argument did not emphasize MD's statement to Duhart. Instead, the prosecution's closing argument focused largely on two themes: (1) that the jurors should find MD's trial testimony credible because of her demeanor on the witness stand and the way she described what occurred, particularly given that she had a friendly relationship with defendant before the incident, and despite multiple inconsistencies demonstrated by trial counsel; and (2) explaining why there was no physical evidence to present. The prosecution's rebuttal argument similarly focused on MD's demeanor and body language on the witness stand, and also attempted to dispel the notion that certain parts of MD's testimony were not consistent with other testimony or prior statements she made. The prosecution did discuss the disclosure to Duhart in rebuttal, but only in an attempt to persuade the jury that MD's testimony was consistent with other testimony regarding who was present when the disclosure was made. The prosecution did not argue that the statement itself was corroborative. The prosecution did touch on the question of whether there was any corroborative evidence. However, in this discussion, the prosecution did not mention MD's disclosure to Duhart. Rather, the prosecution focused on the fact that defendant admitted to police that he had a sexually explicit video on his cellular telephone that was consistent with the video MD testified that she was shown.

We acknowledge that in *Douglas*, the Michigan Supreme Court concluded that the erroneous admission of hearsay under MRE 803A was not harmless error. *Douglas*, 496 Mich at 573-583. There certainly are similarities between *Douglas* and the instant case. For example, like the present matter, *Douglas* was "a pure credibility contest; there were no third-party witnesses to either instance of alleged abuse, nor any physical evidence of it." *Id*. at 580. However, there is a significant distinction between the two cases that compels a different result in this case. In *Douglas*, the trial court's error resulted in the admission of testimony from Jennifer Wheeler, a forensic interviewer qualified as an expert at trial who testified to the content of her interview with the child complainant, and a video recording of that same interview. *Id*. at 569-570, 571. As the Michigan Supreme Court explained:

> Based on the evidence presented in this case, we cannot conclude that Wheeler's testimony and the video recording of the forensic interview were harmlessly cumulative; this hearsay evidence not only corroborated by echo KD's in-court testimony, but added clarity, detail, and legitimacy to it. KD's account of the fellatio at trial, while incriminating, left ample room for reasonable doubt; it betrayed uncertainty on fundamental details, was inconsistent in certain respects with Brodie's corroborative testimony, and was clouded by the strongly disputed motives of Brodie. The evidence of KD's disclosures to Wheeler, however, did much to alleviate this doubt. Rather than simply Brodie corroborating KD's testimony, there now too was Wheeler, an expert no less, with no apparent partiality, repeating, clarifying, and more fully articulating KD's general allegations. The video recording of the forensic interview provided further reinforcement still, as the jury was able to watch KD herself testify again, this time at greater length, with the assistance of Wheeler's expert questioning, and not subject to cross-examination, of course. This video confirmed Wheeler's rendition of KD's statements, repeated them more times over, and elaborated upon them, adding further detail to the graphic scene the prior testimony had sketched.

The resulting prejudice is unsurprising. Wheeler's testimony and the video recording of KD's forensic interview left the jury with a much fuller, clearer, and more inculpatory account of the alleged fellatio than that which was properly admitted through KD and corroborated by Brodie. That this elucidation and reinforcement came through Wheeler, presented as a neutral and authoritative source in this pure credibility contest, only heightened the likelihood of its prejudice. [*Id*. at 581-582.]

In the present case, the nature of the erroneously admitted hearsay statement is simply nothing like what was admitted in *Douglas*. There was no video of a forensic interview presented to the jury, and there was no expert witness "repeating, clarifying, and more fully articulating" MD's testimony. *Id*. at 581. Rather, only a few sentences were admitted repeating what MD had already testified to, but with inconsistencies that would have helped defendant argue that MD was not credible. Under the circumstances, any comparison to *Douglas* is unavailing. On the whole, we are simply not convinced that, "after an examination of the entire cause," it affirmatively appears "that it is more probable than not that" any error in admitting MD's hearsay statement "was outcome determinative." *Burns*, 494 Mich at 110 (quotation marks and citations omitted). The hearsay statement had little, if any, real effect on the trial. Rather, the focus was almost entirely on MD's trial testimony. Despite trial counsel's ability to show various inconsistencies with prior statements and the testimony of other witnesses, the jury found MD's testimony credible. Because it does not appear that the corroborative statement to Duhart was a deciding factor in this credibility determination, we conclude that any error was harmless.

The third question raised by defendant with respect to MRE 803A was whether the prosecutor complied with the notice requirement of the rule. MRE 803A requires the proponent of the statement to "make[] known to the adverse party the intent to offer the statement, and the particulars of the statement, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet the statement." With respect to the 803A notice, this is what appears to have happened in the trial court. Defendant was initially charged in a different lower case number. However, that case was dismissed without prejudice because MD did not appear to testify at the preliminary examination. The charges were then refiled in the present lower court case number. In the prior case, defendant was represented by different counsel. And, in that prior case, the prosecution did file an MRE 803A notice. After the prior case was dismissed and the current one was filed, the prosecution did not file the MRE 803A notice in the present case. Defendant also went through several different appointed attorneys in the present case before reaching trial. Nonetheless, it is clear that trial counsel was aware of the prosecutor's intent to introduce MRE 803A evidence before trial commenced. Before testimony was taken at defendant's trial, trial counsel stated the following:

Likewise, and in conjunction with this, under MRE 803A, it's my understanding after talking to the prosecutor last Friday that a certain witness is going to be proffered. That witness I believe is [Miiesha Duhart]. I believe that is the mother of the complaining witness. She did not testify at any preliminary examination, so I am going to surmise that this is going to be under some kind of tender years exception. There was no 803A notice, MRE 803A notice given to me.

-10-

Trial counsel also mentioned that the notice had been filed in the prior case that had been dismissed. It appears from later statements by trial counsel that when he found out that Duhart would be called to testify, he surmised that she would testify to MD's statements under MRE 803A, based on the preliminary examination testimony and the prior history of the case. Thus, while it does not appear that the prosecution ever provided notice to defendant of the intent to use the statement in this particular case, whether formally or informally, it is clear trial counsel came to this realization through his own logical deduction.

In our prior opinion, we concluded that the question whether defendant received the required notice under MRE 803A was preserved. *Hamilton*, unpub op at 5-6. We dispensed with this question by explaining:

> We are also not persuaded that reversal is necessary with regard to defendant's additional arguments concerning the applicability of MRE 803A. Although the prosecution did not file a written notice of intent in this case, defense counsel's statements at trial clearly show that he was aware that hearsay statements would be introduced under MRE 803A and that he was prepared to address these statements. Accordingly, despite the prosecution's failure to provide formal notice, it nonetheless provided notice "sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet the statement." MRE 803A. Thus, there is no basis for concluding that any error in this regard was outcome determinative. See *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). [*Hamilton*, unpub op at 10.]

The Michigan Supreme Court vacated the portion of this Court's opinion "addressing . . . whether MRE 803A's notice requirement was satisfied." *Hamilton*, ___ Mich at ___. The Court remanded with instructions that we consider "whether (1) the prosecutor 'made known' to the defendant 'the particulars' of the MRE 803A statement, and (2) the defendant was given a 'fair opportunity' to prepare to meet the statement, as required by MRE 803A." *Id*. And if the statement was erroneously admitted under MRE 803A, we must also determine whether the error was harmless. *Id*.

In compliance with the Michigan Supreme Court's remand order, we conclude that the prosecution did not provide the required notice under MRE 803A in this case, and thus, an error did occur. However, it is clear from our review of the record that trial counsel was very much aware of MD's hearsay statement, and of the prosecution's intention to introduce that statement under MRE 803A at trial. As a result, we conclude that the error was harmless. Again, trial counsel was clearly aware of what the prosecution intended to do, and was able to meet the statement at trial. Thus, although the prosecution did not provide the required notice, the intent of the notice requirement was otherwise satisfied; defendant ultimately had a "fair opportunity to prepare to meet the statement." MRE 803A. Further, for the reasons discussed previously in this opinion with respect to the "first corroborative statement" question, the admission of the statement was ultimately harmless when viewed in light of the entire record. Thus, reversal of defendant's convictions is not warranted.

## III. CONCLUSION

Defendant's convictions are affirmed.

/s/ Patrick M. Meter
/s/ Karen M. Fort Hood