# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ERIC ANTHONY HARVEY,

Defendant-Appellant.

UNPUBLISHED
March 14, 2017

No. 329800
Wayne Circuit Court
LC No. 14-007349-01-FC

Before: HOEKSTRA, P.J., and JANSEN and SAAD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of first-degree criminal sexual conduct, MCL 750.520b(1)(a) (victim under 13 years of age), one count of first-degree criminal sexual conduct, MCL 750.520b(1)(b) (victim at least 13 but less than 16 years of age and a relative or member of the same household as defendant), and second-degree criminal sexual conduct, MCL 750.520c(1)(b) (victim at least 13 but less than 16 years of age and a relative or member of the same household as defendant). Defendant was sentenced, as a second habitual offender, MCL 769.10, to 25 to 50 years' imprisonment for each of his first-degree criminal sexual conduct convictions and 10 to 15 years' imprisonment for his second-degree criminal sexual conduct conviction. Because evidence of the victim's past sexual conduct was properly excluded in the absence of an offer of proof from defendant and defendant has not shown that he was denied the effective assistance of counsel, we affirm.

This case arises out of defendant's repeated sexual abuse of his stepdaughter, RA, from the time she was 11 until she was 17 years of age. When she was 14 years old, RA became pregnant and underwent an abortion at defendant's suggestion and with defendant's assistance. RA later disclosed the sexual abuse to a reverend at her church, who reported the matter to authorities. The first jury trial in this case resulted in a hung jury. A second jury trial was then held and led to the convictions and sentences from which defendant now appeals.

On appeal, defendant first argues that the trial court abused its discretion by barring defense counsel from questioning defendant's sister, Kayla Foster, about RA's alleged sexual history with a male other than defendant. In particular, in reference to the timeframe surrounding RA's pregnancy, defense counsel attempted to ask Kayla: "Did [RA] ever report to you she had some type of sex with a boy?" Defendant asserts that Kayla's potential testimony on this subject would have been admissible as an exception to the rape shield statute under MCL

-1-

750.520j(1)(b) because it would have been relevant to the identity of the father of RA's unborn child. Defendant also argues that the trial court's preclusion of this line of inquiry based on defendant's failure to provide notice in accordance with the rape-shield statute violated his Sixth Amendment right of confrontation.

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). Any preliminary questions of law relating to the admission of evidence are reviewed de novo. *Burns*, 494 Mich at 110. "Whether a defendant was denied his right of confrontation involves a question of constitutional law that we review de novo." *People v Henry (After Remand)*, 305 Mich App 127, 152; 854 NW2d 114 (2014). However, defendant failed to raise a confrontation clause argument in the trial court, meaning his constitutional argument is unpreserved and reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999); *Henry (After Remand)*, 305 Mich App at 152.

Defendant's attempt to introduce evidence of RA's prior sexual conduct implicates the rape shield statute, MCL 750.520j, which provides:

> (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
>
> (a) Evidence of the victim's past sexual conduct with the actor.
>
> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.
>
> (2) If the defendant proposes to offer evidence described in subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). If new information is discovered during the course of the trial that may make the evidence described in subsection (1)(a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1).

As written, the statute represents "a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy." *People v Watkins*, 491 Mich 450, 480; 818 NW2d 296 (2012) (citation omitted). In addition, "[t]he prohibitions contained in the rape-shield law represent a legislative determination that, in most cases, such evidence is irrelevant." *People v Adair*, 452 Mich 473, 480; 550 NW2d 505 (1996) (citation omitted). In other words, "[t]he law encourages the reporting of assaults by

-2-

protecting the victims' sexual privacy and bars evidence that may prejudice and mislead the jury and is of only arguable probative worth." *People v Lucas (On Remand)*, 193 Mich App 298, 301; 484 NW2d 685 (1992).

For these reasons, as the statute makes plain, evidence of a complainant's past sexual conduct is generally inadmissible with two narrow exceptions. *Adair*, 452 Mich at 478, 482. One of the exceptions to the general prohibition of the rape shield statute is for "[e]vidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease." MCL 750.520j(1)(b). Such evidence may be admitted if it is material to prove that the complainant's pregnancy was caused by a person other than the defendant and if the evidence is probative of a defense theory. See *Adair*, 452 Mich at 482. But, under the statute, the evidence is admissible only to the extent that it is material and its inflammatory or prejudicial nature does not outweigh its probative value. MCL 750.520j(1); *Adair*, 452 Mich at 485. Moreover, otherwise admissible evidence may be excluded under the statute when a defendant fails to comply with the statutory notice requirements. *Lucas (On Remand)*, 193 Mich App at 301.

However, although the rape-shield statute allows for the preclusion of evidence for failing to provide notice, such exclusion may not always be constitutionally permissible in view of a defendant's Sixth Amendment right of confrontation and cross-examination. *Id.* at 301-302. Consequently, "[w]hen applying the rape-shield statute, trial courts must balance the rights of the victim and the defendant in each case." *People v Benton*, 294 Mich App 191, 198; 817 NW2d 599 (2011). In balancing these conflicting interests, "the trial court should be mindful of the significant legislative purposes underlying the rape-shield statute and should always favor exclusion of evidence of a complainant's sexual conduct where its exclusion would not unconstitutionally abridge the defendant's right to confrontation." *People v Hackett*, 421 Mich 338; 365 NW2d 120 (1984). Further, when "a defendant does not comply with the statutory notice provision, the trial court should also consider the timing of the defendant's offer to produce evidence of this nature." *Lucas (On Remand)*, 193 Mich App at 303. "The closer to the date of trial the evidence is offered, the more this factor suggests wilful misconduct designed to create a tactical advantage and weighs in favor of exclusion." *Id.*

Notably, as a prerequisite to invoking constitutional standards, a defendant "is obligated initially to make an offer of proof as to the proposed evidence and to demonstrate its relevance to the purpose for which it is sought to be admitted." *Hackett*, 421 Mich at 347, 354. "Absent an offer of proof, one can only speculate whether defendant had other witnesses who would testify to acts of sexual conduct between the victim and persons other than defendant." *People v Arenda*, 416 Mich 1, 14; 330 NW2d 814 (1982). Moreover, "the Sixth Amendment right to confrontation requires only that the defendant be permitted to introduce relevant and admissible evidence." *Hackett*, 421 Mich at 354. Thus, absent a sufficient offer of proof to establish the existence and relevancy of the evidence, a defendant cannot claim that he is constitutionally entitled to introduce the evidence at trial. See *id.* at 350, 354; *Arenda*, 416 Mich at 13-14.

Turning to the present case, defendant failed to comply with the notice requirements set forth in the rape-shield statute, and thus, as a statutory matter, the trial court could exclude evidence of RA's past sexual conduct. See MCL 750.520j(2); *Lucas (On Remand)*, 193 Mich App at 301. While conceding that he failed to comply with the statutory notice requirement, defendant contends that exclusion of this evidence violated his constitutional right of

confrontation and that the trial court erred by failing to conduct a balancing test to decide whether application of the notice requirement would violate defendant's right of confrontation. However, this constitutional argument must fail because at no time has defendant made an offer of proof with respect to the substance of Kayla's proposed testimony.

That is, at trial, defense counsel asked Kayla, in reference to the time period surrounding RA's pregnancy, whether RA reported having "some type of sex with a boy." But, there has been no offer of proof that Kayla would have responded in the affirmative or that she could have provided evidence of specific instances of sexual activity between RA and a male other than defendant that would have been relevant to the identity of the man who fathered RA's unborn child. Absent an offer of proof, it is mere speculation to suppose that such evidence exists or that it would have been admissible. Cf. *Arenda*, 416 Mich at 13-14. In these circumstances, the trial court was not required to conduct further inquiry before preventing questions on RA's past sexual conduct,[1] and defendant has not shown a violation of his right of confrontation from the trial court's decision to bar defense counsel's fishing expedition into Kayla's knowledge of RA's past sexual conduct. See *Hackett*, 421 Mich at 354; *Arenda*, 416 Mich at 13-14.

Defendant next argues that he was denied the effective assistance of counsel. In particular, defendant contends that counsel provided ineffective assistance by failing to offer a hearsay objection to the introduction of excerpts from RA's diary and that counsel proved ineffective by failing to give notice related to the introduction of evidence of RA's past sexual conduct under the rape-shield statute.

Defendant did not move in the trial court for a new trial or an evidentiary hearing. Hence, the issue is unpreserved for review. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Because "defendant did not move in the trial court for a new trial or an evidentiary hearing, this Court's review is limited to mistakes apparent from the record." *Id*.

"To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability [exists] that the outcome of the proceeding would have been different but for trial counsel's errors." *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). "Defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *People v Petri*, 279 Mich App 407, 411; 760 NW2d 882 (2008). This Court does not substitute its judgment for that of defense counsel regarding matters of trial strategy, nor does

---

[1] Moreover, while additional inquiry was not required, we note as well that defendant did not seek to offer this evidence until June 29, 2015, when defense counsel questioned Kayla at defendant's second trial, almost 10 months after the September 2, 2014 arraignment on the information. No prior notice of any such evidence was provided, including at defendant's first trial. Indeed, on April 10, 2015, Kayla testified at defendant's first trial, but the defense made no attempt at that time to elicit testimony from Kayla regarding RA's alleged sexual history with a male other than defendant. Defendant's protracted delay in not raising this evidence until the second trial "suggests willful misconduct designed to create a tactical advantage and weighs in favor of exclusion." *Lucas (On Remand)*, 193 Mich App at 303.

it assess defense counsel's performance with the benefit of hindsight. *Id.* A defendant claiming ineffective assistance bears the burden of establishing the factual predicate for the claim. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant argues that defense counsel was ineffective for failing to object to the admission of excerpts of RA's diary. However, declining to raise objections can often be consistent with sound trial strategy, *Unger*, 278 Mich App at 242; and a review of the record in this case reveals a strategic reason for defense counsel's failure to object to the admission of the diary excerpts. Specifically, defense counsel argued in closing that the diary excerpts did not refer to any sexual acts by defendant and that the diary excerpts contradicted RA's testimony that she and defendant had sex almost every day. In particular, defense counsel argued:

Now, finally, really the evidence, the diary, and what [RA] said really doesn't make a whole lot of sense. And let's start with this:

We're having sex every single day. But yet in her diary she doesn't mention anything about a sexual act.

And I'm not a young woman, so I really don't think the way women do, or how young girls do. But what I do understand [is] that a diary . . . to a young woman is her private sanctuary, where she writes her feelings and her emotions, and her most private thoughts.

And you would assume that one who is having – a girl who is having sex is going to write about a sexual act itself.

But yet, when asked, "Did you ever talk about sex in your diary?" "No."

I asked her mother, "In the diary that you read, did you read anything about sex?" Answer: "No."

So there's no mention of sex in the diary, whatsoever. Which ought to tell you that there is no sex going on. Especially not with [defendant]. She doesn't mention [defendant] and sex at all in these diaries.

Again, she says she's having sex every day. But we know that can't be true. Why? Because in her diary she tells you that [defendant] doesn't have time for her.

"[Defendant's] not around. [Defendant] has two jobs. [Defendant] is in school. [Defendant] doesn't have time for me. [Defendant] doesn't talk to me."

So how are you having sex every day with this man . . . .

\* \* \*

But getting to my point. The diary does not match what she testifies to.

Consistent with the strategy evinced in defense counsel's closing argument, defense counsel also used the diary excerpts in his cross-examination of RA, including by emphasizing excerpts in which RA wrote that defendant was never around, would not spend time with her, and would not pay attention to her. Defense counsel read to RA a portion of the diary in which RA wrote that "[a] part of me wants to be an a**h***, so I can run [defendant] off . . . ." In short, defense counsel used the diary excerpts in support of the defense theory that RA was fabricating the allegations against defendant. On this record, in view of defense counsel's tactical use of the diary at trial, defendant has failed to overcome the presumption that defense counsel's decision not to object to the admission of the diary excerpts constituted a sound trial strategy.

Moreover, even if defense counsel's failure to object to the admission of the diary excerpts constituted deficient performance, defendant has failed to demonstrate a reasonable probability of a different outcome but for defense counsel's alleged error. As emphasized by defense counsel, the diary excerpts did not contain any direct references to sexual acts and thus were not so damaging to the defense that they were likely to have affected the outcome. Moreover, RA's testimony regarding defendant's sexual abuse of her was circumstantially corroborated by other evidence. For example, RA's mother testified that she observed defendant in compromising situations, including twice catching him emerging from RA's bedroom in the middle of the night while pulling up his pants. Photographs taken by a nurse were admitted to verify RA's description of a distinguishing mark on defendant's penis. RA also testified about defendant's role in her abortion, and this testimony was corroborated by defendant's own admissions, which also circumstantially supported the conclusion that defendant was the man who impregnated RA. In this regard, defendant admitted to finding the abortion clinic, taking RA to the abortion clinic without informing RA's mother, and providing misinformation on paperwork, including identifying himself as RA's father and listing an incorrect home address. Given the strong circumstantial evidence corroborating RA's testimony independent of the diary excerpts, defendant has not demonstrated a reasonable probability of a different outcome but for counsel's alleged error.

Defendant further argues that defense counsel was ineffective for failing to file the notice required by the rape shield statute. He claims that RA's alleged sexual history with a person other than defendant was a key issue at trial. But, defendant has failed to satisfy his burden to establish a factual predicate for this claim. See *Carbin*, 463 Mich at 600. As discussed earlier, defendant did not provide an offer of proof concerning the content of Kayla's purported testimony about RA's alleged sexual history, and the record affords no basis to conclude that Kayla would have been able to provide testimony that was admissible under the rape-shield statute. This aspect of defendant's ineffective assistance claim is thus factually unsupported.

Affirmed.

/s/ Joel P. Hoekstra
/s/ Kathleen Jansen
/s/ Henry William Saad