# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROBERT HARLEY DAVIDSON,

        Defendant-Appellant.

UNPUBLISHED
May 9, 2017

No. 332032
Delta Circuit Court
LC No. 15-009179-FH

Before: SAWYER, P.J., and MURRAY and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of operating/maintaining a methamphetamine laboratory and conspiracy to deliver/manufacture methamphetamine, based on evidence that defendant's brother travelled from Florida to teach defendant how to manufacture meth and to oversee defendant's collection of the necessary ingredients. Defendant challenges the sufficiency of the evidence supporting his convictions, the admission of a single statement on hearsay grounds, and counsel's performance at trial. These claims lack merit and we affirm.

## I. PERTINENT FACTS

In August 2015, defendant and his girlfriend, Sara Lalonde, needed a place to stay. They moved into Apartment 4 of an Escanaba apartment building. The apartment was leased to defendant's friend, Alan Beauchamp, and Beauchamp's girlfriend, Jessica Sarasin, also lived there. At some point, Sarasin overheard defendant tell Beauchamp that his brother, James Davidson, was coming from Florida for a visit. The purpose of this visit was to teach defendant how to manufacture methamphetamine. Defendant extolled Davidson as "the best meth cooker." Defendant advised Beauchamp that these lessons would happen in the apartment.

Davidson arrived on August 10. Defendant took a taxi to the bus station to collect his brother. On the way back to the apartment, the taxi driver, David Grenfell, heard the brothers furtively whispering. Over defendant's objection, the prosecutor elicited testimony that as the cab passed the Escanaba Public Safety building, one of the brothers said, "They don't even call this a police station. They call it public safety." Grenfell testified that the other man responded, "Well we know how to work them."

Once defendant and Davidson arrived at the apartment, everyone chipped in to help the meth production process. Sarasin volunteered to purchase pseudoephedrine products, the key

-1-

ingredient in Davidson's one-pot meth recipe. Lalonde contacted her friend Leroy Sovey to purchase additional pseudoephedrine products. Sovey later took defendant, Davidson, and Lalonde to Menards and the Dollar Store to purchase other necessary ingredients and materials, such as Coleman fuel, a bag of lye, tubing, and batteries.

Davidson used the apartment's living room as his laboratory. Defendant stood watch to learn the process. After a sufficient quantity had been made, Davidson provided samples to Beauchamp and Sarasin. Beauchamp testified that the group intended to sell the drugs to others for a profit.

The apartment dwellers' entrepreneurial scheme was thwarted, however, by the overpowering odor of the manufacturing process. A neighbor detected a strong sulfur smell coming from Apartment 4 and called the police. Officer Tabitha Marchese responded and also smelled sulfur. Marchese secured Sarasin's permission to enter the apartment and saw a capped needle resting on a spoon. Marchese called for backup. As other officers arrived, they found the various ingredients and equipment necessary to manufacture meth and evidence that someone had recently injected the substance. The officers evacuated the building after finding a bottle in which meth was "cooking" under extreme pressure.

Ultimately, Beauchamp pleaded guilty to manufacturing meth, Sarasin to maintaining a drug house, and Lalonde to soliciting another to purchase pseudoephedrine. They all agreed to testify against defendant. Defendant and Davidson were to be tried together, but Davidson pleaded nolo contendere to operating a meth lab before trial. As noted, the jury convicted defendant of operating/maintaining a meth lab and conspiracy to manufacture and deliver meth. Defendant now appeals.

## II. HEARSAY

Defendant challenges on hearsay grounds the admission of Grenfell's testimony regarding the conversation he overheard in the taxi. We review for an abuse of discretion a trial court's decision to admit evidence and review any underlying legal questions de novo. *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013).

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "However, a statement is not hearsay if the statement is offered against a party and is ' a statement by a coconspirator of a party during the course and in furtherance of the conspiracy on independent proof of conspiracy.' " *People v Martin*, 271 Mich App 280, 316; 721 NW2d 815 (2006), quoting MRE 801(d)(2)(E). To qualify under this exclusion, the proponent must establish three things:

> First, the proponent must establish by a preponderance of the evidence that a conspiracy existed through independent evidence. A conspiracy exists where two or more persons combine with the intent to accomplish an illegal objective. It is not necessary to offer direct proof of the conspiracy. Instead, it is sufficient if the circumstances, acts, and conduct of the parties establish an agreement in fact. Circumstantial evidence and inference may be used to establish the existence of

the conspiracy. Second, the proponent must establish that the statement was made during the course of the conspiracy. The conspiracy continues until the common enterprise has been fully completed, abandoned, or terminated. Third, the proponent must establish that the statement furthered the conspiracy. The requirement that the statement further the conspiracy has been construed broadly. Although idle chatter will not satisfy this requirement, statements that prompt the listener, who need not be one of the conspirators, to respond in a way that promotes or facilitates the accomplishment of the illegal objective will suffice. [*Martin*, 271 Mich App at 316-317 (quotation marks and citations omitted).]

The prosecutor established the existence of a conspiracy through independent evidence. Sarasin, Beauchamp, Lalonde, and Savoy all participated in the conspiracy. Sarasin and Beauchamp testified regarding their awareness of the purpose of Davidson's visit, establishing their places in the conspiracy even before actions in furtherance of the conspiracy began. The witnesses also all explained their roles in achieving the company's ultimate goal of manufacturing meth for sale. We agree with defendant that the prosecutor should have set the proper foundation by calling Sarasin, Beauchamp, and Lalonde to the stand before Grenfell. Independent evidence of the conspiracy was presented out of order, but it was presented. Therefore, no remedy can be had.

The prosecutor presented evidence that the taxi cab statements were made during the course of the conspiracy. The conspiracy began before Davidson's arrival as shown by the conversation Sarasin overheard between defendant and Beauchamp. And the statement furthered the conspiracy because it related to the coconspirators' plans to avoid detection by law enforcement; it was more than idle chatter as it provided reassurance that the illegal objective could continue without fear of detection. See *People v Bushard*, 444 Mich 384, 395; 508 NW2d745 (1993) (holding that statements providing reassurance may be deemed in furtherance of a conspiracy). Accordingly, we discern no error in the admission of this evidence.

### III. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the prosecutor did not provide sufficient evidence to prove that he owned, possessed, or used the apartment or any of the equipment for meth production.[1] Specifically, defendant posits that he was merely a short-term resident with no control over the apartment and that no physical evidence showed he assisted in setting up the meth lab.

We review challenges to the sufficiency of the evidence de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). In doing so, we view "the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution had proved the crime's elements beyond a reasonable doubt." *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). This Court "is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462

---

[1] Defendant does not challenge the sufficiency of the evidence supporting his conspiracy conviction.

Mich 392, 400; 614 NW2d 78 (2000). Circumstantial evidence standing alone may provide "satisfactory proof of the elements of a crime." *Id*.

MCL 333.7401c(1) provides:

A person shall not do any of the following:

(a) Own, possess, or use a . . . building, structure, place, or area that he or she knows or has reason to know is to be used as a location to manufacture [methamphetamine].

(b) Own or possess any chemical or any laboratory equipment that he or she knows or has reason to know is to be used for the purpose of manufacturing [methamphetamine].

(c) Provide any chemical or laboratory equipment to another person knowing or having reason to know that the other person intends to use that chemical or laboratory equipment for the purpose of manufacturing [methamphetamine].

Of import, the statute does not require proof that defendant owned the apartment or was the primary resident. He merely needed to possess or use the apartment. As a resident who contributed to the rent, defendant certainly used the apartment and at least shared possession. Moreover, evidence supported that defendant knew the apartment would be used to manufacture meth. Sarasin overheard defendant's conversation with Beauchamp in which defendant explained that Davidson was coming to visit and they would use the apartment for defendant's apprenticeship in meth manufacture. Witnesses also testified that defendant assisted in purchasing the materials necessary to the manufacture process and observed while Davidson worked so he could learn how to make meth himself. Defendant's role in maintaining and operating a meth lab is not diminished simply because he was sleeping in a bedroom away from the main manufacturing area at the time of the raid. His challenge is without merit.

## IV. ASSISTANCE OF COUNSEL

Finally, defendant challenges the effectiveness of his trial counsel. As defendant did not move in the trial court for a new trial or an evidentiary hearing and this Court denied his motion to remand, our review is limited to mistakes apparent on the existing record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

A criminal defendant has the fundamental right to the effective assistance of counsel. *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984). To establish ineffective assistance, the defendant must show that "counsel's performance fell below the objective standard of reasonableness under the prevailing professional norms," and "there is reasonable probability that, but for the counsel's error, the result of the proceeding would have been different." *People v Toma*, 462 Mich 281, 302-303; 613 NW2d 694 (2000). A defendant is required to overcome a strong presumption that counsel's performance constituted sound strategy. *People v Mitchell*, 454 Mich 145, 156; 560 NW2d 600 (1997). We will not substitute our judgment regarding matters of strategy, nor will we "assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999).

-4-

## A. CHANGE OF VENUE

Defendant first argues that counsel should have pursued a change of venue given the extensive media coverage of the charged incident in this sparsely populated community. Counsel for codefendant Davidson actually sought a change of venue early in the proceedings, but prejudice had yet to be shown at that point. Defendant's counsel did not renew the motion during voir dire.

"It is the general rule that defendants must be tried in the county where the crime is committed. An exception to the rule provides that the court may, in special circumstances where justice demands or statute provides, change venue to another county." *People v Jendrzejewski*, 455 Mich 495, 499-500; 566 NW2d 530 (1997). "[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. Therefore, it may be appropriate to change the venue of a criminal trial when widespread media coverage and community interest have led to actual prejudice against the defendant." *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008) (quotation marks and citation omitted).

> Community prejudice amounting to actual bias has been found where there was extensive highly inflammatory pretrial publicity that saturated the community to such an extent that the entire jury pool was tainted, and, much more infrequently, community bias has been implied from a high percentage of the venire who admit to a disqualifying prejudice. [*Jendrzejewski*, 455 Mich at 500-501.]

The defendant

> must show that there is either a pattern of strong community feeling against him and that the publicity is so extensive and inflammatory that jurors could not remain impartial when exposed to it, or that the jury was actually prejudiced or the atmosphere surrounding the trial was such as would create a probability of prejudice. [*People v Passeno*, 195 Mich App 91, 98; 489 NW2d 152 (1992), overruled on other grounds in *People v Bigelow*, 229 Mich App 218 (1998).]

Generally, "where potential jurors can swear that they will put aside preexisting knowledge and opinions about the case, neither will be a ground for reversing a denial of a motion for a change of venue." *People v DeLisle*, 202 Mich App 658, 662; 509 NW2d 885 (1993). "The reviewing court must . . . closely examine the entire voir dire to determine if an impartial jury was impaneled." *Jendrzejewski*, 455 Mich at 517. Reversal is only warranted where the totality of circumstances shows that the defendant's trial was fundamentally unfair and was not held before "a panel of impartial, indifferent jurors." *DeLisle*, 202 Mich App at 665 (quotation marks and citation omitted).

During voir dire, one potential juror indicated that she heard a lot about the crime through talk in the community and she did not think she could set aside her previously formed thoughts about the matter. The court excused that juror for cause. One juror bore the same last name as one of the coconspirators. The potential juror indicated that the two were not related and he learned of the witness when reading a newspaper article about the offense. The juror stated that he had not "formulated any kind of opinion[] about this case" based on his media exposure. A

third panel member had read a newspaper article "earlier this fall" but stated that she could set that knowledge aside. A fourth agreed to set aside information she learned while reading an article in the *Daily Press*. Other jurors had overcome substance abuse issues and had close family members with substance abuse issues. These venire members indicated that they could set aside their own experiences to fairly consider the case. Another venire member who worked in substance abuse counseling was excused for cause, as was a Michigan State police officer who had investigated meth cases in the line of duty. Others knew or were acquainted with the police witnesses, but promised this would not affect their review of the evidence.

Overall, the answers of venire did not paint a picture of pervasive media exposure that tainted the jury pool. Only four venire members indicated that they learned of the offense through the media or discussions in the community. The court excused for cause the only juror who indicated she could not set aside her preconceived notions. There simply was no ground to seek a change of venue and any motion on counsel's part would have been futile. Accordingly, counsel cannot be deemed ineffective in this regard. See *People v Milstead*, 250 Mich App 391, 401; 648 NW2d 648 (2002).

## B. CHALLENGE TO JUROR SC

Defendant asserts that defense counsel was ineffective for failing to remove juror SC for cause based on her professional familiarity with two witnesses. This juror was randomly selected as the alternate at the close of trial and therefore did not participate in deliberations. Accordingly, any error was rendered moot.

## C. MISTRIAL BASED ON JUROR JK

Defendant further contends that counsel should have sought a mistrial when empaneled juror JK realized mid-trial that he knew Sovey. The first two witnesses at defendant's trial were police officers. One of the officers referred to Sovey as "an older gentleman." At that point, JK realized that Sovey was his wife's cousin. JK had not made the connection during voir dire because his wife's cousin was "three times as old as these guys." JK informed the court of his realization and when questioned, indicated that this relationship would not impact his ability to judge the credibility of the witness. The trial proceeded without objection.

"A mistrial is warranted only when an error or irregularity in the proceedings prejudices the defendant and impairs his ability to get a fair trial." *People v Waclawski*, 286 Mich App 634, 708; 780 NW2d 321 (2009) (quotation marks and citation omitted). There is no record indication that JK's presence on the jury prejudiced defendant or rendered his trial unfair. As noted, JK assured the court that his relationship with Sovey would not affect his decision. And Sovey's testimony bore minimal value compared to that of Sarasin and Beauchamp, who explicitly implicated defendant in the meth manufacturing process. Sovey implicated Lalonde in recruiting him to purchase pseudoephedrine products. Although Sovey drove defendant to the Dollar Store and Menards, Sovey did not know what defendant purchased and therefore could

not directly connect defendant to the charged offenses.  Under these circumstances, a mistrial motion would have been futile and counsel cannot be deemed ineffective for failing to pursue it.

We affirm.

/s/ David H. Sawyer
/s/ Christopher M. Murray
/s/ Elizabeth L. Gleicher