# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

WILLIE RICHARDSON RODGERS JR.,

       Defendant-Appellant.

UNPUBLISHED
June 26, 2018

No. 334072
Macomb Circuit Court
LC No. 2015-004189-FC

Before: BORRELLO, P.J., and SHAPIRO and TUKEL, JJ.

PER CURIAM.

Defendant appeals by right from his convictions of three counts of first-degree criminal sexual conduct (person under 13, defendant over 17), MCL 750.520b(2)(b). Defendant was sentenced to 800 months for each conviction, with counts two and three to run consecutively. For the reasons discussed below, we affirm defendant's convictions, but remand for resentencing.

## I. BACKGROUND

The complainant, NB, alleged that when she was five years old, she was sexually assaulted by defendant, who was in a dating relationship with her mother, Neveah Bethea. NB, six years old at the time of trial, testified that she was sexually assaulted by defendant on two occasions. She stated that the first incident occurred when she had gone into Bethea's room to ask for something to eat. She testified that when she entered the bedroom, defendant was laying on the bed naked in a manner that revealed his private parts. She reported that when she turned around to leave the room, defendant closed the door and blocked it with a large object. According to her testimony, defendant told her to pull her pants down, and when she asked him "why?" he did not respond but instead pulled her pants down, and penetrated her with his penis. NB testified that she began to cry because of the pain, and that there was blood on her vagina. She testified that after the sexual assault, she left the room to take a shower because she "was bleeding." NB testified that on another occasion, while she was in her room taking a nap, defendant entered the room with a "blue thing," which by her description appears to be a dildo, which he first inserted into her vagina and then inside her buttocks. She testified that the dildo felt bad to her body, that she was bleeding from her vagina, and that afterwards, she took a shower.

-1-

NB's father is Joseph Quinn. NB stayed with him and his girlfriend, Dana Johnson, during court-scheduled parenting time. Johnson testified that during a parenting time visit, NB told her about the assaults. She testified that one day, she perceived a foul odor after NB used the restroom and asked NB if she was "feeling okay, was there something wrong, what had she done in the bathroom?" In response, NB told her that it was a secret. Johnson stated that during a 10-minute conversation, NB told her about the incidents of sexual assault perpetrated against her by defendant. Johnson stated that she asked NB "a couple questions" during the conversation. Johnson narrated the contents of the entire conversation including descriptions of the two incidents for which defendant was charged. Defendant objected to the testimony but the trial court allowed it under MRE 803A.

The prosecution also presented testimony from two other witnesses who described out-of-court statements by NB. Defendant objected to such testimony from Dr. DeGraw, the physician who conducted the gynecological examination and who recounted statements from both NB and her father. Similar testimony was received from Heather Solomon, the forensic examiner who interviewed NB, but there was no objection.

Defendant testified and denied sexually assaulting NB. In addition to his denial, the defense offered evidence that defendant was recovering from foot surgery when he was living with NB and her mother. He claimed that as a result of the surgery, he was limited in ambulation and lower body movement such that he was physically incapable of the crime. He also presented several character witnesses.

Defendant was convicted and sentenced on all charges and now appeals.

## II. HEARSAY CHALLENGES

Defendant argues that the trial court improperly admitted hearsay testimony in which Johnson, Solomon, and Dr. DeGraw described or recounted out-of-court statements made by NB. We reject defendant's argument as to Johnson's testimony, but agree that the NB's statements recounted by Solomon and DeGraw were inadmissible hearsay.

## A. JOHNSON'S TESTIMONY

Defendant argues that the trial court abused its discretion by admitting Johnson's testimony recounting NB's statements. The trial court admitted this testimony over objection finding that it fell within the hearsay exception defined in MRE 803A. We agree with the trial court and so reject this claim of error.[1]

---

[1] "A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (quotation marks and citation omitted). "Preliminary questions of law, including whether a rule of evidence or statute precludes admissibility of the evidence, are reviewed de novo." *Burns*, 494 Mich at 110.

Under the Michigan Rules of Evidence, hearsay "is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay statements are generally inadmissible unless an exception applies. MRE 802. One such exception is MRE 803A, which provides in relevant part as follows:

> A statement describing an incident that included a sexual act performed with or on the declarant by the defendant . . . is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding, provided:
>
> (1) the declarant was under the age of ten when the statement was made;
>
> (2) the statement is shown to have been spontaneous and without indication of manufacture;
>
> (3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and
>
> (4) the statement is introduced through the testimony of someone other than the declarant.

Defendant does not dispute that elements 1 and 4 are met. He contends, however, that NB's statements to Johnson were not spontaneous, that they were not made immediately after the incident, and that the delay was not excusable.

We disagree with defendant's argument that NB's statements to Johnson were not spontaneous. For a victim's statement to be spontaneous, "MRE 803A generally requires the declarant-victim to initiate the *subject of sexual abuse*." *People v Gursky*, 486 Mich 596, 613; 786 NW2d 579 (2010) (emphasis in original). "[T]he mere fact that questioning occurred is not incompatible with a ruling that the child produced a spontaneous statement." *Id*. at 614. Although the evidence established that there was questioning by Johnson before NB disclosed the abuse, this did not render the statement unspontaneous. In *Gursky*, 486 Mich at 614-615, the Michigan Supreme stated that "[w]hen questioning is involved, the trial court must look specifically as the questions posed in order to determine whether the questioning shaped, prompted, suggested, or otherwise implied the answers." Accordingly, "[t]his approach requires that trial courts review the totality of the circumstances surrounding the statement in order to determine the issue of spontaneity." *Id*. at 615.

After reviewing the records, we conclude that NB's statements were spontaneous because the statements were not prompted by a "question specifically concerning sexual abuse." *Id*. at 618. During trial, Johnson testified that on July 14, 2015, she detected a foul odor after NB used the restroom. Thereafter, while combing NB's hair, Johnson questioned NB about the odor." Specifically, she asked NB if she was "feeling okay, was there something wrong, what had she done in the bathroom?" At that point, NB told her that it was a secret. Johnson then narrated to the jury what NB told her about the secret, i.e., the sexual assault perpetrated on her by

defendant. Considering the totality of the evidence, there is no showing that the statements were specifically prompted by Johnson's questions concerning sexual abuse.

Defendant also argues that the statements were inadmissible because they were not made immediately after the incident and there was no excuse for the delay. MRE 803A(3) provides that the statement would be admissible where "either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance." NB disclosed the abuse to Johnson on July 14, 2015. Therefore, there was a delay of at least several weeks and perhaps as much as three months.

MRE 803A(3) excuses a delay in making the statement where the delay is caused by fear or *other* "*equally effective circumstance.*" (Emphasis added). NB's testified that defendant told her that the sexual abuse was a "secret," and that she should not tell anyone about it. Given her young age, we conclude that this was sufficient to constitute an "equally effective circumstance" justifying the delay. This Court has upheld admission of statements under MRE 803A where the delay has been longer than in this case. E.g., *People v Dunham*, 220 Mich App 268, 272; 559 NW2d 360 (1996) (holding that the trial court did not abuse its discretion in admitting the victim's statements made after an eight—or nine-month delay based on her "well-grounded fear" of the defendant).

Because the statements described by Johnson were spontaneous and the delay was justified, the testimony was admissible under MRE 803A.

## B. SOLOMON'S TESTIMONY

After NB disclosed the sexual assault, Quinn and Johnson took NB for a forensic interview at Care House. The interview was conducted by Heather Solomon, a trained forensic interviewer. Solomon testified that after questioning NB about the difference between the truth and a lie, she was satisfied that NB understood the difference. Solomon stated that NB was "very forthcoming and gave specific details," when she utilized open-ended questions. During the interview, NB would talk about one assault, then move to talking about a second or different assault, before returning to the first assault; nevertheless, Solomon stated that NB's details about the first assault was consistent when she revisited it. She stated that after questioning NB, she concluded that the interview was "[c]onsistent with the allegations" against defendant.

Hearsay "is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). While Solomon's testimony did not recount the particular words used by NB, she did recount the substance of NB's statements, by stating that those statements were "consistent with the allegations." MRE 801 (a) does not define "statement" as the words used by someone out of court. Rather, "statement" is defined as "an oral or written assertion." Solomon's testimony made clear that during the interview, NB "asserted" that the defendant had sexually assaulted her. Moreover, Solomon significantly bolstered the credibility of that hearsay assertion by stating that she has interviewed hundreds of children and that she employs certain interviewing techniques "because we want to obtain the truth of what may or may not have occurred." Accordingly, the testimony was inadmissible.

The Supreme Court addressed this issue in *People v. Douglas*, 496 Mich 557; 852 NW2d 587 (2014). There, the defendant was charged with CSC against a child and a forensic interviewer testified at trial about the content of the child's statements, described the mechanisms of forensic interviewing, and stated her belief that the child's report was accurate. *Douglas*, 496 Mich at 569. A videotape of the interview was shown to the jury. *Id*. at 571. The Court rejected the prosecution's argument that such testimony was admissible under MRE 803A or MRE 803(24), and concluded that the error was not harmless. *Id*. at 575-583. In this case, which was tried after *Douglas* was decided, the prosecution did not ask the interviewer to describe the details of the child's statements about the assault or to offer a direct opinion that the child was truthful and credible. However, as already noted, the critical aspect of the child's statements during the interview was her assertion that defendant had sexually abused her, i.e. that her statements were "consistent with the allegations." Further, Solomon's detailed description of the methods she uses to "obtain the truth" constitutes expert assurances of the child's truthfulness and credibility.

## C.  TESTIMONY OF DR. DEGRAW

Child pediatrician Dr. Marcus DeGraw conducted a physical examination of NB. He testified that he asked Quinn the reason for the visit, and Quinn informed him that NB had been physically and sexually abused. He also testified that during the physical examination, NB told him that she had been sexually abused, including by penetration with a penis. The trial court overruled defendant's hearsay objection concluding that the testimony fell within MRE 803(4) which defines a hearsay exception for

> [s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pains, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

Admission of these statements was error because the examination was not conducted for diagnosis or treatment but rather for investigative purposes. In *People v Shaw*, 315 Mich App 668, 674-676; 892 NW2d 15 (2016), we considered this issue and held such testimony outside the exception because the complainant had not sought out the examining physician for treatment, but rather on direction of someone involved in investigating the alleged sexual assaults. We noted in that case that the complainant had been referred to the specific physician for a forensic examination, had never previously seen this doctor, and that the alleged assaults had occurred far in the past that a need for treatment was very unlikely. *Id*. In this case, the examination occurred a few months after the alleged assaults, and NB had not complained of any injuries. Nevertheless, the lapse in time was much shorter here than in *Shaw*, and we do not consider the delay as a significant factor against admission. However, it is clear from the record that NB was seeing Dr. DeGraw on referral from the forensic interviewer, that NB had not complained of any injuries, and that no physician contact had been initiated by NB's father, Johnson or any other caregiver. Dr. DeGraw testified that he saw NB in a "consult specific to abuse" rather than during his general practice. He also testified that he was called by an "investigative agency," given information about the alleged assaults, and asked to conduct an examination. Solomon

agreed that she had given the doctor's name to Quinn and encouraged him to obtain an examination.

### D. DOES THE ADMISSION OF THE HEARSAY REQUIRE REVERSAL

Dr. DeGraw's testimony concerning the out-of-court statements of NB and Quinn, though wrongly admitted, was of only minimal consequence. He did not go into any details about statements made to him about when, where, or how the abuse had occurred, and testified that he did not ask for the name of the alleged abuser and never learned it. The import of his testimony was really his description of his findings on physical examination. Given the far more detailed descriptions testified to by Johnson, and in NB's own testimony, we conclude that Dr. DeGraw's brief reference to his understanding of the reason for the examination was harmless error.

The testimony of Solomon is more troubling. Although she did not offer NB's descriptions of the assault, she clearly testified that she uses specialized methods to get to the truth, and that using those methods, NB told her what had occurred and that her statements were "consistent with the allegations" in this case; namely, that defendant had sexually assaulted NB. However, as noted, there was no objection to this testimony. Accordingly, we review it on a plain error standard. "Under the plain error rule, defendants must show that (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected a substantial right of the defendant. Generally, the third factor requires a showing of prejudice—that the error affected the outcome of the trial proceedings." *People v. Pipes*, 475 Mich 267, 279; 715 NW2d 290 (2006).

Although we find error, we do not conclude that the error was "clear or obvious." The objectionable hearsay came in a single sentence at the end of Solomon's testimony. And the question was formulated in a manner seemingly intended to approach, but not cross the line defined in *Shaw*. Though that line was crossed, the error was subtle and absent an objection, we cannot fault the trial court for not acting *sua sponte*. Moreover, after a review of the entire record, we conclude that the error was not likely to have affected the outcome. First, Johnson's testimony about the initial disclosure was more significant and descriptive. Second, NB and defendant each testified, and so the jury was able to make their own determinations as to their respective credibility. Third, defense counsel's attempts to impeach NB with her preliminary examination testimony were unsuccessful. While small inconsistencies were shown, the attempt at impeachment ultimately demonstrated that NB's preliminary examination testimony was essentially consistent with her trial testimony. And while we are limited to a printed transcript, NB's testimony appears to have been credible and consistent during both direct and cross examinations. Fourth, defendant's claim that he would have been physically incapable of the charged actions was undercut by the testimony of his own physician. Given all this evidence, we cannot conclude that the improper admission of Solomon's testimony likely affected the outcome of the trial.

Accordingly, we conclude that the improper admission of the statements reported by Solomon and Dr. DeGraw do not rise to the level of reversible error given the relevant standards of review.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to convict him of the offenses.[2] This argument requires little discussion. We evaluate a sufficiency of the evidence claim by asking whether "the evidence, viewed in a light most favorable to the [prosecution], would warrant a reasonable juror in finding guilt beyond a reasonable doubt." *People v Nowack*, 462 Mich 392, 399; 614 NW2d 78 (2000).

NB's testimony was sufficient to prove beyond a reasonable doubt that defendant committed the charged offenses. Defendant characterizes NB's testimony as "inconsistent, unreliable, and inherently incredible testimony of a six-year-old girl who did not understand the meaning of truth or the implications of what she was saying." We disagree. The trial court questioned NB about the difference between the truth and a lie, and determined that she understood the difference, a finding not challenged on appeal or inconsistent with the record. Defendant's sufficiency argument is really a credibility challenge. However, when there is conflicting testimony, the question of witness credibility should be left for the trier of fact. *People v Lemmon*, 456 Mich 625, 642-643; 576 NW2d 129 (1998). There was also testimony from a doctor that the physical examination of NB revealed anatomical changes consistent with penetration. There was sufficient evidence to convict.

## IV. OTHER EVIDENTIARY RULINGS

Defendant raises several challenges to the trial court's evidentiary rulings during trial, all of which we reject.

### A. IN-CAMERA REVIEW OF CHILD PROTECTIVE SERVICES (CPS) RECORDS

Before trial, defendant filed a motion for discovery seeking among other things, "[p]ermission to review current Friend of the Court file in Macomb County." With regard to that record, defense counsel argued during a pretrial proceeding that "there is some CPS development that I'm led to believe [that] started to occur early in the process between this mother and this father, not my client, but the father of [NB], that may have some effect on how this child becomes aware of certain things during the course of time." Additionally, defense counsel also alleged that he "found out that during the early part of this [case], there is another allegation of [Terry Wilson] who's living with this mother having had some inappropriate contact with this child as well." The prosecutor argued that the only persons allowed to review the records were the perpetrators. The trial court denied defendant's request stating that it does not have the "authority under the circumstances, unless you're aware of something outside the statute that

---

[2] This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction following a jury trial. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011).

gives me that authority. Absent authority, I can't review it."[3] As an alternative relief, the trial court directed that the defense be provided the full police reports concerning the allegations against Wilson.

"Criminal defendants do not have general rights to discovery." *Stanaway*, 446 Mich at 680. Rather, discovery in criminal cases is left to the discretion of the trial court. *Id.* MCR 6.201 governs discovery in criminal cases. *People v Philips*, 468 Mich 583, 589; 663 NW2d 463 (2003). MCR 6.201(C)(1) provides in relevant part that "there is no right to discover information or evidence that is protected from disclosure by constitution, statute, or privilege[.]" However, "[i]f a defendant demonstrates a good-faith belief, grounded in articulable fact, that there is a reasonable probability that records protected by privilege are likely to contain material information necessary to the defense, the trial court shall conduct an in camera inspection of the records." MCR 6.201(C)(2).

Arguably, the trial court should have done an in-camera review of the records given the accusation that Wilson also abused NB at some time. "In camera inspection is often utilized to determine whether the evidence sought is discoverable." *People v Stanaway*, 446 Mich 643, 680; 521 NW2d 557 (1994). Defendant's assertion that the CPS records contain allegations of sexual abuse against another individual demonstrates a good-faith belief grounded in articulable facts that statements regarding sexual abuse of the victim would be in the records. As noted, however, the trial court provided alternative relief in giving defendant full access to the police reports concerning Wilson and leave to introduce evidence that Wilson had sexually assaulted NB, a fact that might provide an alternative explanation for NB's descriptions of abuse. Under those circumstances, the trial court did not abuse its discretion as to the CPS documents.

## B. PRODUCTION OF EMAIL COMMUNICATIONS

Next, defendant argues that the trial court abused its discretion in denying his motion for the production of emails between Quinn and Bethea. During a pre-trial hearing, defendant sought discovery of some emails between NB's parents "relative to this existing matter." The prosecutor stated that she was unaware of the existence of the emails, that they were not referenced in defendant's motion for discovery, and that she did not have the opportunity to inquire into their existence. At that point, the trial court said that defendant had "subpoena rights and discovery rights independent of what the prosecution has." Defense counsel responded that he would make inquiries about those rights. It was clear that the court would rehear the motion if other efforts proved unsuccessful. However, the issue was not raised again before the trial court.

Defendant cannot show that the failure to subpoena the emails denied him a substantial defense. Defendant did not make an offer of proof or otherwise describe the relevance of the emails he sought. Rather, defendant merely sought discovery of the emails "relative to this existing matter."

---

[3] A trial court's ruling regarding whether records are discoverable or protected by privilege is reviewed for an abuse of discretion. *People v Stanaway*, 446 Mich 643, 680; 521 NW2d 557 (1994).

## C. EXCLUSION OF VIDEO RECORDING

Defendant also argues that the trial court abused its discretion by excluding a video recording of NB crying while she was on her way to Quinn's house. The trial court excluded the video on grounds of relevance. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Evidence which is not relevant is not admissible." MRE 402.

The trial court properly excluded the video because NB's emotions on an unknown day lacked the necessary foundation to establish relevancy. The video, proffered by defendant, was taken at unknown date and time, and under unexplained circumstances. In his appeal brief, defendant speculates that the video was relevant to show that NB may have been molested by Quinn, and that he had a strong motivation to shift the blame to defendant. Defendant's contention is unsupported by the records. Indeed, while there was evidence that NB was sexually abused by Wilson, there were no allegations of sexual abuse of NB levied against Quinn. Moreover, NB unequivocally testified that both defendant and Wilson had molested her. The relevancy of the video was never shown to be anything more than speculation. Accordingly, the trial court did not abuse its discretion by excluding it.

## V. CONSECUTIVE SENTENCES

Defendant argues that the trial court had no authority to impose consecutive sentences when there was no evidence that the offenses arose from the same transaction. We reject this contention as the evidence supports the conclusion that counts 2 and 3 were part of the same transaction. MCL 750.520b(3) gives the sentencing court authority to impose consecutive sentences where the subject offenses arose from the same transaction. NB testified that defendant entered her room while she was taking a nap, took off her clothes, and first inserted an object inside her vagina, and thereafter, he placed it inside her buttocks. Defendant's act of penetrating both NB's vagina and her buttocks with the dildo "grew out of a continuous time sequence in which the act of vaginal [penetration] was immediately followed by the act of [anal penetration]." *People v Ryan*, 295 Mich App 388, 403; 819 NW2d 55 (2012). Accordingly, the sentencing court had the authority to impose consecutive sentences for these offenses.

This does not end our inquiry, however, because when a court has discretionary authority to impose consecutive sentences, the decision to do so remains subject to review for an abuse of discretion.[4] "In Michigan, concurrent sentencing is the norm" and a consecutive sentence may only be imposed when the sentencing judge makes a record of the "particularized reasons—with reference to the specific offenses and the defendant—to impose [the] sentence[s] consecutively."

---

[4] "[W]hen a statute grants a trial court discretion to impose a consecutive sentence, the trial court's decision to do so is reviewed for an abuse of discretion, i.e., whether the trial court's decision was outside the range of reasonable and principled outcomes." *Norfleet*, 317 Mich App at 654.

The "strong medicine of consecutive sentences is reserved for those situations in which so drastic a deviation from the norm is justified." *People v Norfleet*, 317 Mich App 649, 666; 897 NW2d 195 (2016).

At sentencing, the trial court did not articulate reasons for exercising its discretion to impose consecutive sentences. Accordingly, we vacate defendant's sentence and remand for resentencing. If the sentencing judge again chooses to impose consecutive sentences, he must set forth grounds for that decision, consistent with *Norfleet,* and sufficient to allow appellate review.

Defendant's convictions are affirmed and the matter remanded for resentencing. We retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro
/s/ Jonathan Tukel

# Court of Appeals, State of Michigan

# ORDER

People of MI v Willie Richardson Rodgers, Jr.

Docket No.    334072

LC No.    2015-004189-FC

Stephen L. Borrello
Presiding Judge

Douglas B. Shapiro

Jonathan Tukel
Judges

Pursuant to the opinion issued concurrently with this order, the Court VACATES the July 5, 2016 judgment of sentence and REMANDS this matter to the Macomb Circuit Court for resentencing. Should the sentencing judge again impose consecutive sentences, he must set forth on the record his grounds for that decision, consistent with *People v Norfleet*, 317 Mich App 649, 666; 897 NW2d 195 (2016), and sufficient to allow appellate review. This Court retains jurisdiction in the cause.

Upon the expiration of the 56-day period in which to file an application for leave to appeal in the Supreme Court, MCR 7.305(C)(2), the trial court shall commence resentencing proceedings, and those proceedings shall be given priority on remand until they are concluded. The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court a copy of the judgment of sentence entered on remand. The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

Either party may file a supplemental brief pertaining to the issues raised on remand within 21 days after entry of the trial court's order deciding the matter or 21 days after the transcript of the hearing is filed, whichever is later. The responsive party may file a supplemental brief in reply. Alternatively, the parties may file a stipulation to dismiss this appeal.

/s/ Stephen L. Borrello

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

June 26, 2018
Date

Chief Clerk