*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LANCE DUANE THORNTON,

Defendant-Appellant.

UNPUBLISHED
May 5, 2022

No. 356499
Oakland Circuit Court
LC No. 2016-258686-FC

Before: LETICA, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

A jury convicted defendant Lance Duane Thornton of multiple counts of first-degree criminal sexual conduct. The victim, KW, was the young daughter of Thornton's ex-girlfriend. KW was six years old when the abuse began, and 11 years old when she reported it to a friend.

Thornton challenges the admission of other-acts evidence, asserts that his counsel performed ineffectively by failing to consult with an expert, and claims that the trial court violated the "two-thirds rule" when it sentenced him to four concurrent terms of 25 to 38 years' imprisonment. We discern no merit in any of Thornton's arguments and affirm his convictions and sentences.

## I. BACKGROUND

Thornton originally stood trial in 2016 and was convicted of four counts of CSC-I, MCL 750.520b(1)(a) (sexual penetration with a victim less than 13 years of age by a defendant over 17 years of age). The trial court vacated his convictions on grounds irrelevant to this appeal. When the victim, KW, testified at the first trial, she 13 years old. At the retrial giving rise to this appeal, KW was 15 years old. The prosecutor presented the testimony of eight additional witnesses and records of Thornton's phone and text messages.

KW described multiple incidents of abuse committed by Thornton in considerable detail. She recalled that almost every time Thornton abused her, he also pulled her hair. KW's mother testified that Thornton often pulled her hair during sexual intercourse. The text messages offered as exhibits highlighted that Thornton enjoyed pulling the hair of his consensual sexual partners.

-1-

Dr. Denise Shuttie testified that she examined KW for evidence of trauma but found none. She opined that an absence of physical evidence of trauma is not inconsistent with sexual assault. Defense counsel did not present an expert to counter Dr. Shuttie's testimony.

The jury convicted Thornton as charged and the trial court sentenced him to four concurrent prison terms of 25 to 38 years, with credit for 1,000 days served. At the sentencing hearing, the prosecutor requested a sentence of 30 to 60 years' imprisonment,[1] and defense counsel asked the trial court to impose a 25- to 38-year sentence. Defense counsel urged that a 38-year maximum sentence could be appropriate under the two-thirds rule set forth in *People v Tanner*, 387 Mich 683, 690; 199 NW2d 202 (1972), and MCL 769.34(2)(b). This appeal followed.

## II. ADMISSION OF EVIDENCE UNDER MRE 404(B)

Thornton first contends that the trial court erred by admitting text messages and testimony related to his acts of pulling the hair of his sexual partners under MRE 404(b). He asserts that the evidence was irrelevant, the prosecution failed to articulate a proper theory of admissibility, and that even if relevant, the evidence was inadmissible under MRE 403. Because the hair-pulling testimony constituted highly probative evidence of a "scheme, plan, or system in doing an act" and the prosecutor properly proposed its introduction on this ground, the admission of this evidence did not contravene MRE 404(b).

### A. STANDARD OF REVIEW

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). When a trial court's decision to admit or exclude evidence involves preliminary questions of law, such as "whether a rule of evidence precludes admissibility, the question is reviewed de novo." *People v McDaniel*, 469 Mich 409; 412; 670 NW2d 659 (2003). "A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *Burns*, 494 Mich at 110 (quotation marks and citation omitted).

### B. ANALYSIS

"The general rule under MRE 404(b) is that evidence of other crimes, wrongs, or acts is inadmissible to prove a propensity to commit such acts." *People v Denson*, 500 Mich 385, 397; 902 NW2d 306 (2017). However, MRE 404(b)(1) provides, in relevant part:

> Evidence of other crimes, wrongs, or acts . . . may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or

---

[1] The probation department also recommended a sentence of 30 to 60 years' imprisonment.

accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

"The admissibility of other-acts evidence under MRE 404(b) has long been governed by the test our Supreme Court outlined in *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994)." *People v Galloway*, 335 Mich App 629, 638; 967 NW2d 908 (2020). Other-acts evidence is admissible under MRE 404(b) if the prosecution establishes that it is offered for a proper purpose under the Rule, bears relevance to the issues presented in the case, and that the probative value of the evidence is not outweighed by unfair prejudice. *Denson*, 500 Mich at 398. Our Supreme Court has cautioned that "merely *reciting* a proper purpose does not actually demonstrate the *existence* of a proper purpose for the particular other-acts evidence at issue and does not automatically render the evidence admissible." *Denson*, 500 Mich at 400.

## 1. PROPER PURPOSE

MRE 404(b) prohibits the admission of other-acts evidence when the evidence is probative only of a defendant's general inclination to commit crimes, and in particular crimes of the sort for which he or she is standing trial. *Id*. at 398. However, when relevant to a noncharacter issue, "such as one of the purposes specifically enumerated in MRE 404(b)(1)," evidence of other acts may be admitted. *Id*. at 399. The prosecution bears the burden of establishing a "proper noncharacter purpose for admission of the other-acts evidence." *Id*. at 398. This means that the prosecution must articulate a specific evidentiary purpose for the evidence by explaining how it fits directly or inferentially in proving a non-character fact at issue in the case. "The mechanical recitation of a permissible purpose, without explaining how the evidence relates to the recited purpose, is insufficient to justify admission under MRE 404(b)." *Id*. at 400 (quotation marks, citation, and alteration omitted).

Thornton argues that the prosecutor failed to articulate a proper purpose for the admission of the hair-pulling evidence, asserting that the prosecutor merely stated that the evidence established a common scheme or plan without explaining the relevance. The record belies this allegation. The prosecutor specifically characterized the hair-pulling evidence as indictive of Thornton's regular sexual behavior, thus supporting that the evidence demonstrated a "common scheme or plan." The trial court admitted it on that basis, concluding that the evidence established "a method of operation that [defendant] uses when he's engaging in sexual acts." Because the prosecutor articulated a proper noncharacter purpose for admission, Thornton's argument to the contrary is factually unsupported. *Denson*, 500 Mich at 398.

## 2. LOGICAL RELEVANCE

"Logical relevance" is the "touchstone" for the admissibility of other-acts evidence. *Id*. at 401. Under the second prong of the other-acts admissibility test, "logical relevance is determined by the application of MRE 401 and MRE 402." *Id*. at 400 (citations omitted).

Trial courts must "closely scrutinize the logical relevance of the evidence under the second prong" of the admissibility test to determine whether an articulated purpose is proper. *Denson*, 500 Mich at 400. "Other-acts evidence is logically relevant if two components are present: materiality and probative value." *Denson*, 500 Mich at 401.

For the other-acts evidence to be material, it must be related to a fact or issue of consequence in the determination of the case. For that same evidence to have probative value, it must have a tendency to make the purported fact of consequence more or less probable than it would be without that evidence. The relationship of the elements of the charge, the theories of admissibility, and the defenses asserted governs what is relevant and material. [*Galloway*, 335 Mich App at 639; (quotation marks and citations omitted).]

The court must examine "the similarity between a defendant's other act and the charged offense" to evaluate "whether the prosecution has provided an intermediate inference other than an impermissible character inference . . . ." *Denson*, 500 Mich at 402 (quotation marks and citations omitted). "The degree of similarity that is required between a defendant's other act and the charged offense depends on the manner in which the prosecution intends to use the other-acts evidence." *Id*. at 402-403. "If the prosecution creates a theory of relevance based on the alleged similarity between a defendant's other act and the charged offense, we require a 'striking similarity' between the two acts to find the other act admissible." *Id*. at 403 (citation omitted).

"[E]vidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000). "General similarity between the charged and uncharged acts does not, however, by itself, establish a plan, scheme, or system used to commit the acts." *Id*. at 64. Where the other-act "consists merely in doing of other similar acts" there must be "such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." *Id*. at 64-65 (quotation marks, emphasis, and citation omitted).

Thornton argues that the other-act evidence admitted at trial did not establish a common scheme or plan because there were "no common features" that could "fairly be characterized as components of a plan repeatedly used to commit the same crime." Specifically, he contends that evidence of his hair-pulling during consensual sexual intercourse is not sufficiently similar to the crimes charged to support the inference defendant had a common scheme or plan.

Thornton's focus is misplaced. The analysis required under MRE 404(b) requires a court to consider whether the evidence supplies a non-character inference both probative of and material to an issue of consequence in the case. The central issue presented during Thornton's trial was whether he sexually abused KW. KW testified that during the assaults, he pulled her hair. Evidence of Thornton's proclivity to engage in hair-pulling during sexual relations establishes a quintessential intermediate inference: that he enjoys and employs an unusual and highly specific "system in doing an act." MRE 404(b). The fact that Thornton often engaged in hair-pulling during sexual intercourse made it more probable that KW truthfully testified that defendant pulled her hair during the alleged sexual assaults, and therefore that the assaults had taken place. Accordingly, the evidence was both related to a fact of consequence, and strongly corroborative of that fact. That the other-acts hair-pulling evidence involved Thornton's adult sexual partners is

irrelevant. Hair-pulling during sexual relations is a highly distinctive feature justifying admission as evidence of a "scheme, plan, or system in doing an act" under MRE 404(b).[2]

### 3. MRE 403

The third prong requires application of MRE 403. *VanderVliet*, 444 Mich at 74-75. MRE 403 provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "Rule 403 determinations are best left to a contemporaneous assessment of the presentation, credibility, and effect of testimony" by the trial court. *VanderVliet*, 444 Mich at 81.

Thornton argues the trial court should have excluded the other-acts evidence under MRE 403 because the evidence was substantially prejudicial, needlessly cumulative, and risked confusing the jury. "All relevant and material evidence is prejudicial; [this Court is] concerned only with unfairly prejudicial evidence . . . ." *People v Sharpe*, 502 Mich 313, 333; 918 NW2d 504 (2018). The test is whether the probative value of the evidence is outweighed by any inherently prejudicial nature of evidence admitted under MRE 404(b). "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Mardlin*, 487 Mich 609, 627; 790 NW2d 607 (2010) (quotation marks and citation omitted).

Here, the evidence was strongly probative of the prosecution's theory that Thornton had repeatedly sexually abused KW. Although hair-pulling during sexual relations is unusual, evidence of this behavior is not so inflammatory that on balance, its prejudicial effect outweighed its probative value. The trial court did not abuse its discretion in reaching the same conclusion.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Next Thornton argues that his trial counsel performed ineffectively by failing to call an expert witness to rebut the testimony of Dr. Denise Shuttie, the prosecutor's expert witness, and further failed to effectively cross-examine the witness. Neither claim has merit.

### A. STANDARD OF REVIEW

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was

---

[2] Although *modus operandi* evidence is typically used to prove identity, it may also be employed to prove the actus reus—that a charged event occurred. See Leonard, *The New Wigmore: Evidence of Other Misconduct and Similar Events*, § 13.3 pp 803, 807-808 (2019). Hair-pulling during sexual relations is an example of modus operandi evidence.

made." *People v Blevins*, 314 Mich App 339, 348-349; 886 NW2d 456 (2016). "Because no supplemental hearing was held on this issue, our review is limited to the existing record." *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003).

## B. ANALYSIS

To succeed on a claim for ineffective assistance of counsel, a defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51, 826 NW2d 136 (2012); see also *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). In establishing the first prong, "a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52. To establish the second prong, a defendant must show that "but for counsel's deficient performance, a different result would have been reasonably probable." *Id*. at 56 (quotation marks and citations omitted).

Dr. Shuttie testified that she examined KW in March 2016 and found no physical evidence of sexual trauma. Thornton contends that his counsel ineffectively neglected to call an expert witness to rebut Dr. Shuttie's testimony that when an assault occurs months before a physical examination, it is not uncommonly impossible to detect. Because defense counsel did not retain an expert, Thornton adds, counsel failed to effectively cross-examine Dr. Shuttie.

"Defense counsel's failure to investigate and attempt to secure a suitable expert witness to assist in preparing the defense may constitute ineffective assistance. However, effective counsel need not always provide 'an equal and opposite expert.' " *People v Carll*, 322 Mich App 690, 702; 915 NW2d 387 (2018) (citations omitted). "Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy . . . ." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008).

The obvious flaw in Thornton's argument is that he has failed to identify a medical theory countervailing Dr. Shuttie's testimony, or that an expert capable of presenting competing testimony was even theoretically available. Nor does Thornton point to any caselaw supporting the existence of an alternative view of the forensic evidence. These deficiencies doom his ineffectiveness of counsel claim. Thus, even assuming that counsel should have called or consulted with an expert, Thornton has failed to sustain his burden of demonstrating that "but for counsel's deficient performance, a different result would have been reasonably probable." *Trakhtenberg*, 493 Mich at 56.

The record also refutes Thornton's claim that his counsel ineffectively cross-examined Dr. Shuttie. Dr. Shuttie testified that she found no physical evidence of sexual assault when she examined KW. She explained that since the body has an "incredible ability to heal," the absence of physical evidence of trauma was not inconsistent with sexual assault. Dr. Shuttie also opined that a sexually abused minor could have an intact hymen. During cross-examination, defense counsel succeeded in weakening the impact of Dr. Shuttie's testimony:

> *Q.* You're a volunteer at CARE House, it's a simple question. There was no evidence of sexual assault in this examination, correct?

-6-

*A*. Correct.

*Q*. All right. Now, when it comes to examining the hymen, from the perspective of the likelihood of being able to observe some type of trauma, there are factors, for instance, age; would you agree? For instance, a young child maybe would be a circumstance where you might have more indication of trauma factors based upon the extent of a certain type of assault; would you agree?

*A*. Possibly.

\* \* \*

*Q*. . . . . Now, if [KW] had been assaulted and traumatized literally multiple hundreds of times since the age of six by an adult developed male by way of sexual penetration, would it be more likely that there would be indications of past scarring, tearing, injury than if you have a circumstance or a situation where it happened once a couple of months ago?

*A*. It all depends.

*Q*. And what does it depend on?

*A*. What kind of force was used.

*Q*. The force involving sexual penetration of an adult male with a penis into the vagina of a six-year-old?

*A* As I told already to you, you could have penetration and still have no findings.

*Q*. And if it's happened hundreds of times, every day, every day?

*A*. I have no—it could be possible—

*Q*. Would it be more likely under those circumstances?

*A*. You would think so.

Defense counsel engaged in a thoughtful and vigorous cross-examination of Dr. Shuttie, drawing attention to the weaknesses in her testimony and eliciting a critical concession. Given KW's testimony regarding the prevalence of the sexual assaults and Dr. Shuttie's testimony that a victim of numerous sexual assaults might be more likely to exhibit physical evidence of trauma than a victim of fewer sexual assaults, the jury could have inferred that Thornton did not sexually assault KW by way of penile penetration of the vagina. Against this evidentiary backdrop, we reject that counsel's cross-examination fell below the objective standard of reasonableness.

## IV. SENTENCING

Finally, defendant argues that the trial court erred by applying the "two-thirds rule" under *Tanner*, 387 Mich at 690, and MCL 769.34(2)(b), when calculating Thornton's maximum sentence. Thornton has waived this argument.

A "waiver" is defined as "the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citations omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. (quotation marks and citations omitted). The express approval of the trial court's action by the trial counsel extinguishes any claim of error regarding that action. See *id*. Thus, a defendant may not base his appeal on action taken or requested by counsel in the lower court. *People v Rodriguez*, 251 Mich App 10, 32; 650 NW2d 96 (2002).

At the June 25, 2020 sentencing hearing, defense counsel expressly requested that the court impose a 25- to 38-year sentence.[3] This express request constitutes a waiver of his sentencing challenge, eliminating Thornton's ability to obtain relief on appeal.[4]

Affirmed.

/s/ Anica Letica
/s/ James Robert Redford
/s/ Michelle M. Rick

---

[3] Defendant does not contend that counsel was ineffective. And, although the statutory penalty for a CSC-I conviction is life or a term of years, when, as here, a defendant is over 17 and the victim was under 13, and the court opts not to impose a life sentence, it is required to impose a minimum sentence of not less than 25 years. MCL 750.520b(2)(b).

[4] The parties now agree that the two-thirds rule "does not apply to sentences where the statutory maximum is 'life or any term of years.' " *People v Floyd*, 490 Mich 901; 804 NW2d 564 (2011), quoting *People v Powe*, 469 Mich 1032; 679 NW2d 67 (2004).